MORINGLANE & LLEDÓ, demandante y apelante, *v.* RICARDO SKERRET, demandado y apelado.

No. 5541. *Sometido:* Junio 15, 1932.—*Resuelto:* Abril 7, 1933.

---

* NOTA: Véase el prefacio.

*R. V. Pérez Marchand,* abogado de la apelante; *López de Tord & Zayas Pizarro,* abogados del apelado.

El Juez Presidente Señor del Toro, emitió la opinión del tribunal.

Dos causas de acción se formularon en la demanda enmendada que sirve de base a este pleito. Por la primera se reclamaron $1,610 por el uso de cierto ancón y por la segunda la devolución del ancón debidamente reparado, o la devolución y el pago de los gastos que su reparación ocasione, con más diez dólares diarios hasta la entrega en forma y las costas del litigio.

Contestó el demandado oponiéndose a las reclamaciones de la demandante y alegando que entró en posesión del ancón por habérselo cedido el municipio de Ponce para la mejor realización de cierta obra en que el municipio estaba interesado.

Fué el pleito a juicio. Practicóse una larga prueba documental y testifical y la corte finalmente lo decidió por sentencia favorable al demandado con imposición de costas al actor.

Para fundar su sentencia la corte de distrito emitió una larga opinión. En ella aprecia la evidencia practicada en el sentido de que no demuestra que existiera contrato alguno entre demandante y demandado. A su juicio era al municipio a quien el arrendatario debió reclamar la propiedad arrendada al no serle entregada a su debido tiempo y no al demandado, y era el municipio el que podía reclamar contra su alcalde si es que éste había autorizado indebidamente el uso del ancón y contra el demandado si es que éste había de-

vuelto el ancón deteriorado o inservible. Sostuvo la corte que tampoco puede derivarse de la evidencia aportada existencia de cuasi contrato alguno entre demandante y demandado.

No conforme con la sentencia, apeló la demandante, señalando en su alegato la comisión de cinco errores, cometidos a su juicio por la corte, 1º., al no reconocer que la acción ejercitada se basa en los artículos 1056 y 1788 del Código Civil; 2º., al declarar que los ancones "Evaristo" y "Número 21" no se incluyeron en el contrato de arrendamiento del municipio con Moringlane, declarando que el "Número 21" estaba excluído del contrato por previa cesión del alcalde al demandado; 3º., al declarar que el demandado no estaba obligado para con la demandante no obstante reconocer que los ancones le habían sido cedidos sin autoridad por el alcalde; 4º., al no reconocer que el demandado venía obligado a pagar a la demandante el uso del ancón y a devolvérselo en las mismas condiciones en que lo recibió, y 5º., al dictar sentencia declarando la demanda sin lugar con costas.

■■ La cuestión fundamental a estudiar y a resolver es una: la de si la demandante demostró la existencia de un cuasi contrato del que puedan derivarse los derechos que reclama.

Lo primero que por ella se probó en el juicio fué que el Municipio de Ponce por escritura de 2 de enero, 1929, a virtud de su Ordenanza No. 69, serie 1928, y mediante subasta, arrendó a Ernesto M. Moringlane los 56 ancones, 3 remolcadores, botes, yolas y demás enseres de su servicio de alijo, por término de año y medio y precio de veinte y cuatro mil dólares anuales. Los 56 ancones se describen uno a uno en la escritura y entre ellos se encuentran los dos a que este pleito se refiere.

Seguidamente demostró la existencia de la sociedad Moringlane y Lledó constituída por escritura pública de 23 de enero de 1929, inscrita en el Registro Mercantil del Distrito Sur—Ponce. Su cláusula cuarta dice: "La Sociedad no

aporta capital alguno; pero el socio señor Moringlane y Martínez lleva a ella todos los bienes tomados en arrendamiento al Municipio de Ponce, y el señor Lledó, su trabajo personal.''

Declaró entonces su socio Agustín Lledó, refiriéndose al demandado, en parte, como sigue: Nosotros no le hemos arrendado ningún ancón, es decir, nosotros dejamos de percibir, en la entrega de los ancones, un ancón: no se nos entregó el ancón No. 21. . . . Sí, señor. Estaba incluso en el arrendamiento de los cincuenta y seis ancones. . . . Ese ancón fué cedido por el alcalde. Estaba en posesión de don Ricardo Skerret. . . . . lo tenía ocupado con un martinete: estaba trabajando con él. . . . Yo escribí una carta diciéndole que habíamos arrendado los ancones que poseía el Municipio, y que estaban incluídos esos ancones, y que ese ancón le costaría diez pesos diarios. Cada mensualidad vencida, le pasaba un borderó. . . . Y don Ricardo me mandaba a decir que pasaría por mi oficina. . . . Ni pasó por la oficina, ni devolvió el ancón. El ancón está en poder de él. Está en terrenos donde están fabricando el malecón. . . . don Ricardo Skerret lo usó como seis meses, y después lo arrinconó allí, . . . Nunca fué llevado al varadero de Moringlane & Lledó. Pagan dos mil dólares mensuales de arrendamiento, por la totalidad de los ancones. Tienen otros gastos.

Skerret usó en su negocio el ancón por seis meses. Durante ese tiempo yo le estaba pasando estados mensuales: le pasé cuatro mensualidades—borderós, y me estaba entreteniendo—estuvo entreteniéndome y aplazándome, y para aquí y para allá, y nunca llegué a verle la cara en mi oficina en relación a este asunto. Yo recibí una contestación cuando me mandó una razón de que había desocupado el ancón. Después de haberlo usado como seis meses, me mandó razón de que había desocupado el ancón, y yo fuí a presenciar el ancón, y el ancón estaba imposibilitado para trabajar; el ancón no podía trabajar, porque estaba lleno de agua, lleno de arena, y en malas condiciones. Y fuí a tierra y hablé con

el encargado del señor Skerret—no sé quién es—nada más ...
No hablé nunca personalmente con el señor Skerret. No
quise recibir el ancón. Él trataba de entregármelo, pero yo
no quise recibirlo. . . . Estaba en malas condiciones, y hoy
está peor. . . . Está inservible. . . . No costará menos de
mil dollars la reconstrucción; reconstruirlo para dejarlo en
las mismas condiciones en que fué entregado.

No he recibido excusa o bonificación alguna por el daño
de no tener el ancón. . . . Ni del señor Skerret, ni del mu-
nicipio. A la pregunta: ¿Usted se ha dirigido al municipio
diciéndole que dado que ese ancón está inservible y no le ha
sido entregado, no debe aparecer en el tonelaje que le arren-
daron, que le paga usted al municipio, y que deben rebajarle
el importe de ese ancón? Contestó finalmente: No me he
dirigido, porque el arrendador fué un municipio, y el que está
hoy en posesión es otro municipio. Reclama en virtud de que
al señor Moringlane se le adjudicaron los ancones en diciem-
bre, en la subasta pública que se celebró aquí en Ponce. . . .
No hizo ningún contrato con Skerret. . . . Yo he arrendado
ancones en otras ocasiones de esas dimensiones, y he cobrado
eso mismo. . . . No dió cuenta al municipio de que el señor
Skerret tenía ese ancón en su poder, y no se lo entregaba.
No ha hecho ninguna petición al Municipio de Ponce con mo-
tivo de eso.

Las cartas a que se refirió el testigo en su declaración
dicen:

"Playa de Ponce, P. R., 4 de enero de 1929. Sr. Ricardo Skerret,
Ingeniero Director del Malecón de Ponce, Playa Ponce, P. R.—Señor:
Tengo a bien informarle que desde esta fecha me he hecho cargo de
toda la propiedad concerniente al servicio de alijos del Municipio de
Ponce, por haberme sido adjudicada la subasta que se llevó a cabo
para el arrendamiento de la mencionada propiedad. Y al comuni-
carlo así a usted, he de informarle a la vez que desde esta fecha le
cargaré en cuenta el alquiler de los dos ancones que tiene usted al
servicio a razón de $10 diarios por uno de ellos y de $5 por el otro,
montante que debe ser pagadero quincenalmente. Sírvase pues tomar
nota para los efectos y sepa que estoy a la orden de usted en todo

cuanto pueda darle servicio. Atentamente, E. M. Moringlane, PP. Agustín Lledó.''

''7 de enero de 1929. Sr. E. M. Moringlane, Playa de Ponce. Señor: Acuso recibo de su carta de enero 4 recibida en estos momentos en la que me informa Ud. que cargará en cuenta el alquiler de dos ancones que tengo a servicio a razón de $10 diarios por uno de ellos y $5 diarios por el otro. Sirve la presente para informar a usted, que desde luego no estoy conforme con esto y he dado orden para que le sea devuelto inmediatamente el ancón por el cual trata usted de cobrar $5 diarios y el otro le será devuelto inmediatamente que sea desprovisto del equipo que en la actualidad tiene a bordo. Estos dos ancones fueron cedidos por el Alcalde de Ponce al que suscribe con el entendido que no serían usados para fines comerciales y sí para el replanteo de las obras y trabajos preliminares de las obras del Malecón. Esperaba que esto se le hiciera saber así al que subastaba este servicio. No habiéndose hecho en la forma que se esperaba, por quien corresponda, como queda dicho, he resuelto devolverlos. Atentamente, R. Skerret.''

''Playa de Ponce, P. R., 6 de junio de 1929. Sr. Don Ricardo Skerret, Ingeniero Director del Malecón de Ponce, Playa de Ponce, P. R. Muy señor n/ y amigo: Nos vamos a permitir recordarle que ya se han vencido cinco meses que tiene usted ocupado uno de n/ ancones sin que nos haya satisfecho todavía nada por concepto de alquiler del mismo. Deseamos se sirva tomar nota de que hemos debitado a su cuenta la cantidad de $1,470 o sea 147 días partiendo desde el 4 de enero ppdo. hasta el 31 de mayo, y le estimaremos nos informe para qué fecha podremos enviar a recoger este montante. Con gracias anticipadas por la atención que ésta le merezca, nos es grato suscribirnos de Ud. ss. attos. amigos y Ss. Ss., Moringlane & Lledó.''

''12 de junio de 1929, Sres. Moringlane & Lledó, Playa de Ponce, Ponce, P. R.—Atención Señor Lledó: Muy Sres. nuestros y amigos: En contestación a su carta de junio 6, que trata sobre el asunto de un ancón utilizado en las obras del replanteo del malecón, me permito informarle que dicho ancón fué cedido gratuitamente por el anterior Alcalde, Señor Guillermo Vivas Valdivieso, al que suscribe para ser utilizado en las obras del replanteo del malecón, trabajo que gratuitamente también llevó a cabo el contratista que suscribe para el Municipio de Ponce. Al salir el anterior Alcalde, señor Guillermo Vivas Valdivieso, nada me notificó sobre el asunto que estuviera yo obligado a pagar arrendamiento por el antes mencionado ancón, es más, a mí no se me ha notificado oficialmente que este ancón haya sido arrendado a persona alguna. Sin embargo, no es mi intención que por el

uso de este ancón vaya a salir nadie perjudicado y teniendo esto en cuenta le sugeriría que se dirigiera usted a la Administración actual haciendo las alegaciones que creyera usted prudente hacer por el uso de dicho ancón. Sin ningún otro particular de momento, quedo de usted, Atto. S. S. y amigo, R. Skerret.''

Dos testigos más declararon por la parte demandante, Juan Barnés e Isaac Nethan. El primero, tenedor de libros de la demandante, dijo que a la fecha del juicio, la demandante llevaba gastados además de los dos mil dólares mensuales del arrendamiento, $3,152.25 en primas de seguros, $6,264.02 en reparaciones, $6,599.30 en sueldos y $2,208.42 en gastos generales. El segundo, empleado de la demandante y antes del municipio, dijo que cuando el ancón ''No. 21'' fué entregado al demandado estaba en buenas condiciones y cuando fué por él devuelto se encontraba inservible y necesitado de una gran reparación.

Por la parte demandada declararon Guillermo Vivas, Víctor E. Auffant y el propio demandado Skerret.

El primero fué alcalde de Ponce en los años 1927 y 1928. Como tal cedió el ancón ''No. 21'' por un acto de cortesía para con los señores que habían rematado las obras del puerto de Ponce. Le avisó el señor Auffant que había que hacer el replanteo para empezar la obra. El señor Marxuach, ingeniero del Departamento del Interior, intervino para marcar los puntos, y entonces yo facilité el ancón para que ellos hicieran ese trabajo. Yo no podía ceder el ancón del municipio, porque la ley no lo permitía. Fué una cortesía nada más. Al rematista. Como se trataba de una obra del municipio, yo quería cooperar a ella. Por el trabajo de replanteo durante el tiempo en que yo fuí alcalde, no se pagó nada.

Auffant es ingeniero civil. Trabajó con Skerret. Cuando se empezó el replanteo de las obras del puerto de Ponce, el ingeniero Marxuach, representante del Comisionado del Interior que tenía la inspección directa de las mismas, quiso que el replanteo se hiciera por mar y no desde tierra. Para ello solicitó del alcalde una embarcación porque se trataba de

una obra de cooperación por la cual no recibía el contratista remuneración alguna, y el alcalde no tuvo inconveniente en cederla. No fué mediante pago. Explica el uso que se dió al ancón "No 21" cedido. No fué superior a su capacidad. El uso del ancón aceleraba la obra beneficiándose tanto el contratista como el municipio, pero el trabajo que se hizo no sirvió de nada porque fué desechado. El contratista actuó porque lo exigió el ingeniero inspector.

El demandado, ingeniero contratista, declaró que se usó del ancón porque el ingeniero encargado de la obra quería que se hiciera el replanteo por el mar, dirigiéndose por medio de Auffant al alcalde, y lo consiguió para usarlo en el replanteo solamente, sin pagar nada.

El ancón no sufrió por el uso a que se destinara. No hubo que hacerle reparaciones. Cuando se devolvió estaba en el mismo estado en que se entregó. Fué usado sólo en el trabajo del replanteo. Se entiende por replanteo tirar las líneas: para hacer las excavaciones, si fuera un edificio, o la hinca de pilotes, si fuera un puente o un malecón; esas líneas se pueden tirar desde tierra, de acuerdo con las estaciones que llamamos, en las cuales coloca el ingeniero sus instrumentos. . . . Ese replanteo debía hacerlo la persona que tomó los datos para redactar el proyecto, y sobre el terreno debía haber dejado los puntos que debían seguirse después para la ejecución de la obra. Los ingenieros del Departamento del Interior son los encargados de eso. A mí no me benefició; al ingeniero del Departamento del Interior. Yo lo que tuve fué gasto con eso, porque el trabajo de tierra me cuesta mil, y el trabajo en esa forma me cuesta tres mil.

Tal es el caso. La cuestión a resolver envuelta en el mismo no es fácil en verdad. En su estudio a veces nos ha parecido que asiste la razón a la demandante, pero al tratar de basar nuestra conclusión, no hemos podido establecer por completo el nexo jurídico por virtud del cual se encuentre obligado para con ella el demandado en el sentido en que la reclamación se interpone.

Nuestro Código Civil reconoce expresamente como fuente de obligaciones no sólo la ley y los contratos si que también los cuasi contratos, que define como "los hechos lícitos y puramente voluntarios, de los que resulta obligado su autor para con un tercero y a veces una obligación recíproca entre los interesados". Artículos 1042 y 1787 del Código Civil, Ed. 1930. Regula solamente dos, la gestión de negocios ajenos y el cobro de lo indebido, pero estamos conformes con la apelante en que ello no quiere decir que sean esos dos los únicos cuasi contratos de que puedan derivarse obligaciones exigibles ante los tribunales de justicia. De suerte que aunque no se tratara como no se trata en este caso de gestión de negocios ajenos o cobro de lo indebido, si de los hechos lícitos y voluntarios que sin previa convención realizaron las partes pudiera derivarse alguna responsabilidad del demandado para con la demandante exigible ante los tribunales, éstos vendrían obligados a reconocerla con todas sus consecuencias. Esto es sencillo. Lo difícil, repetimos, es decidir si surge o no de los hechos de este caso un cuasi contrato perfecto entre demandante y demandado.

A virtud del arrendamiento de que se ha hecho mérito, la demandante tenía derecho a que el municipio le entregara los ancones que le había arrendado. Dos estaban en posesión del demandado. La demandante decidió dirigirse directamente al demandado en vez de al municipio. Conocemos su carta de enero 4, 1929, y la contestación que le diera el demandado en la suya de enero 7.

Si el demandado hubiera contestado el 7 de enero en la forma en que lo hizo el 12 de junio siguiente, no habría cuestión, pero se avino a entenderse con la demandante y esa avenencia es la que parece iniciar la relación jurídica en que funda su reclamación la demandante.

Sin embargo, aún siendo así, encontramos que en su primera contestación el demandado de modo terminante se negó a pagar canon alguno de arrendamiento y alegó hallarse en posesión de los ancones del municipio por habérselos éste ce-

dido con anterioridad al arrendamiento, prometiendo única- mente devolverlos, uno de ellos en seguida y el otro en cuanto retirara de él el equipo que en él tenía colocado.

Cumplió con la devolución inmediata prometida. No con la condicionada. ¿Cuál era el derecho de la demandante ante la falta de cumplimiento del demandado dentro de un tiempo razonable? A nuestro juicio debió continuar reclamando la devolución y si no la obtenía poner el hecho en conocimiento del arrendador que era con quien había celebrado el contrato fuente clara de derechos y obligaciones, a los fines consi- guientes. No lo hizo. Prefirió dejar el caso en lo incierto. Y a nuestro juicio no tiene ahora un derecho claro y perfecto en que basar su reclamación directa contra el demandado, es- pecialmente cuando no surge diáfano de los autos que la ac- tuación del demandado le haya ocasionado algún perjuicio real y efectivo de que no pueda resarcirse entendiéndose con su arrendador.

Siendo ésas las circunstancias del caso, *procede la confir- mación de la sentencia apelada, excepción hecha de su pro- nunciamiento de costas.*