CARMELO ORTIZ ANDÚJAR ET AL., demandantes y recurrentes, *v.* ESTADO LIBRE ASOCIADO DE PUERTO RICO, demandado y recurrido.

*Número:* RE-88-247 *Resuelto:* 2 de diciembre de 1988

*José Roberto Vega Díaz*, abogado de los recurrentes; *Rafael Ortiz Carrión, Procurador General*, y *Miriam Álvarez Archilla, Procuradora General Auxiliar*, abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

Carmelo Ortiz Andújar, su esposa Ana M. Rivera y la Sociedad Legal de Gananciales compuesta por ambos demandaron en el Tribunal Superior, Sala de Bayamón, al Estado Libre Asociado de Puerto Rico y a su aseguradora. Procuraban recuperar del Estado Libre Asociado la disminución en su patrimonio surgida como consecuencia de los daños sufridos por su automóvil. Apoyaron su acción en la doctrina del enriquecimiento injusto. El Estado y su aseguradora negaron responsabilidad.

Luego de varios incidentes procesales —incluso una sentencia sumaria desestimatoria de la acción contra la aseguradora— las partes sometieron al tribunal de instancia la estipulación de hechos siguiente:

a- El 11 de enero de 1983, a eso de las 6:40 P.M., mientras el demandante Carmelo Ortiz Andújar, quien se desempeñaba como agente de la Policía de Puerto Rico, se dirigía a tomar su turno de trabajo, fue informado por un empleado de una gasolinera Mobil, ubicada en la carretera número dos (2), cerca del Hospital Hermanos Meléndez en Bayamón, que allí acababa de ocurrir un robo. El demandante viajaba en su vehículo privado marca Honda, año 1981, tablilla 10A133.

b- *Por lo reciente del robo*, el demandante *inició una persecución* para tratar de localizar a los autores del delito. *Detuvo un automóvil en el que iban los sospechosos* del robo, y le ordenó a éstos salir uno a uno. *Uno de ellos le disparó* al demandante y *logró herirlo en el pecho*. Los asaltantes abandonaron el vehículo en que viajaban y *huyeron en el vehículo del demandante*.

c- El vehículo del demandante apareció al día siguiente parcialmente desmantelado y con su tapicería interior quemada, en un barrio de Caguas. El demandante recuperó la posesión de éste.

d- Por los he[ch]os antes relatados se presentaron denuncias contra tres (3) personas por los delitos de robo, tentativa de asesinato, apropiación ilegal agravada y violación a los artículos 6 y 8 de la Ley de Armas. Un magistrado encontró causa probable en ausencia y fijó fianzas. Las personas no han sido arrestadas por desconocerse su paradero. (Énfasis suplido.) *Exhibit* XIV, pág. 40.

Dicho foro declaró sin lugar la acción. Inconformes, a solicitud de los esposos Ortiz-Rivera y mediante trámite para mostrar causa, revisamos.

## II

A la luz de los hechos expuestos, ¿tiene derecho a ser resarcido el policía Ortiz Andújar por las pérdidas de su au-

tomóvil —bien privado— que actúa como tal en horas no laborables? ¿Es aplicable la doctrina del enriquecimiento injusto?

■ Nos confrontamos con una controversia novel para la que el legislador expresamente no ha previsto ni provisto solución. Es pues menester recurrir al mandato contenido en el segundo párrafo del Art. 7 del Código Civil, expositivo de que "[c]uando no haya ley aplicable al caso, el tribunal resolverá conforme a *equidad*, que quiere decir que se tendrá en cuenta la razón natural de acuerdo con los principios generales del derecho, y los usos y costumbres aceptados y establecidos". (Énfasis suplido.) 31 L.P.R.A. sec. 7.

■ En ese sentido, la doctrina invocada del enriquecimiento injusto es un principio general del derecho fundado en la equidad que informa todo el ordenamiento jurídico. Véanse: J. Puig Brutau, *Fundamentos del Derecho Civil*, Barcelona, Ed. Bosch, 1983, T. II, Vol. 3, págs. 43–74; A. Hernández Gil, *Derecho de obligaciones*, Madrid, Librería Bosch, 1960, T. 1, pág. 262 y ss.; L. Díez-Picazo, *Fundamentos del Derecho Civil Patrimonial*, Madrid, Ed. Tecnos, 1972, págs. 73–81; D. Alberto de Rovira Mola, *Enriquecimiento Injusto*, VIII Nueva Enciclopedia Jurídica 570 (1956); M. Albaladejo, *Comentarios al Código Civil y compilaciones forales*, Madrid, Ed. Rev. Der. Privado, 1984, T. XXIV, págs. 10–43. Según Puig Brutau, *op. cit.*, pág. 44: "De enriquecimiento injusto se habla propiamente cuando la ley no ha previsto una situación en la que se produce un desplazamiento patrimonial que no encuentra una explicación razonable en el ordenamiento vigente." Ahora bien, lejos de ser una regla en sentido estricto, es un criterio de refinado y prudencial discernimiento, que hemos de tener en cuenta los llamados a juzgar al hacer uso de nuestras facultades normativas. Como todo principio general, ha ido desarrollándose y ganando concre-

ción a través de la jurisprudencia. De hecho, hoy nadie le niega su franco crecimiento.

■ Jaime Santos Briz, según la jurisprudencia española, señala sistemáticamente los siguientes requisitos de la acción de enriquecimiento injusto: "1) Existencia de un enriquecimiento. 2) Un correlativo empobrecimiento. 3) La conexión entre empobrecimiento y enriquecimiento. 4) Falta de causa que justifique el enriquecimiento. 5) Inexistencia de un precepto legal que excluya la aplicación del enriquecimiento sin causa." Albaladejo, *op. cit.*, págs. 27–28.

■ Aunque en Puerto Rico esta doctrina no es regulada en forma directa por el Código Civil, la encontramos subsumida en la figura de los cuasicontratos y en otras disposiciones de nuestro ordenamiento. G. Velázquez, *El enriquecimiento injusto en el Derecho puertorriqueño*, 5 Rev. Der. Leg. Jur. C. Abo. P.R. 176, 177–178 (1940). Ya en *Moringlane & Lledó v. Skerret*, 44 D.P.R. 874 (1933), reconocimos la existencia de otras situaciones de las cuales puede derivarse una obligación exigible. Posteriormente la jurisprudencia discutió su origen y su trayectoria histórica y, finalmente, fue incorporada plenamente a nuestro acervo doctrinario con todos sus perfiles y su alcance. *Morales v. Municipio de Toa Baja*, 119 D.P.R. 682 (1987); *Plan Bienestar Salud v. Alcalde Cabo Rojo*, 114 D.P.R. 697 (1983); *Silva v. Comisión Industrial*, 91 D.P.R. 891 (1965); *Compañía Popular v. Corte*, 63 D.P.R. 121 (1944). También reconocimos sus límites. No la podrá invocar el gestor de mala fe ni se aplicará cuando resulte contraria a una clara política pública plasmada en un estatuto o en la Constitución.[1] *Ocasio v. Alcalde Mun. de*

---

[1] Preceptos similares han sido establecidos para otros principios de equidad. Véanse: *Figueroa Cancel v. E.L.A.*, 114 D.P.R. 684 (1983); *J.R.T. v. Hosp. de la Concepción*, 114 D.P.R. 372 (1983); *Infante v. Tribl. Examinador Médicos*, 84 D.P.R. 308 (1961).

*Maunabo*, 121 D.P.R. 37 (1988); *Morales v. Municipio de Toa Baja*, supra; *Plan Bienestar Salud v. Alcalde Cabo Rojo*, supra.

 Sin pretender agotar el catálogo de los múltiples principios que rigen el enriquecimiento injusto, en *Plan Bienestar Salud v. Alcalde Cabo Rojo*, supra, pág. 703, establecimos las normas siguientes:

1ª La doctrina del enriquecimiento injusto es aplicable, dentro de determinadas situaciones, a los órganos administrativos.

2ª La aplicación de la doctrina dependerá de las circunstancias específicas de cada caso. El Código Civil no agota las situaciones a las que la doctrina se extiende.

3ª La doctrina del enriquecimiento injusto no es invocable cuando su efecto es vulnerar un principio importante de orden público encarnado en la Constitución o las leyes del país.

4ª La doctrina es invocable, entre otras circunstancias, cuando no se han observado ciertas formalidades de ley fácilmente subsanables o susceptibles de haber sido ejecutadas con el asesoramiento debido.

### III

Contra este trasfondo doctrinario y jurisprudencial analicemos si concurren en este caso los requisitos indispensables doctrinarios apuntados.

El *primer* requisito está presente. No existe la más mínima controversia en cuanto a la veracidad de los hechos y a la encomiable iniciativa del policía Ortiz Andújar de intentar frustrar la huida de los autores del delito original. En esa gestión usó el único medio disponible y a su alcance: su vehículo privado. Cualquier vacilación de su parte hubiese resultado en una diligencia frustrada ab initio. De otro modo, con su acción aumentaron las probabilidades de lograr el arresto inmediato de los malhechores. Aunque su gestión a la postre no tuvo éxito, no cabe duda de que experimentó un

empobrecimiento o disminución en su patrimonio al resultar privado de y desmantelado su automóvil.

Ahora bien, de mayor complejidad es detectar el *segundo* requisito: ¿tuvo el Estado un enriquecimiento correlativo? Contrario a lo resuelto por la ilustrada sala de instancia, contestamos en la afirmativa. Ciertamente si los hechos hubiesen ocurrido mientras el agente usaba un vehículo oficial, la pérdida hubiese recaído total e inmediatamente sobre el Estado. En ese sentido, la gestión directamente redundó en un provecho social y económico gubernamental. El error de la sala sentenciadora consiste en haber entremezclado conceptos relativos a una acción de enriquecimiento injusto con una de daños y perjuicios. En consecuencia, aplicó incorrectamente la doctrina de asunción de riesgo y la regla de bomberos (*fireman's rule*).(2) La cuestión amerita una sucinta elucidación.

▅▅▅▅▅ La acción de enriquecimiento injusto es distinta a una de indemnización de daños y perjuicios por actos ilícitos. Según Santos Briz —al citar a Castán Tobeñas— "la pretensión por daños se orienta siempre al agente provocador, y son indispensables los conceptos de culpa e imputabilidad para determinar el deber de indemnizar. La pretensión de enriquecimiento se encamina siempre contra el enrique-

---

(2) Ambas doctrinas han sido discutidas en *Soto v. Tropigas de P.R.*, 117 D.P.R. 863 (1986); *Colón v. Municipio de Orocovis*, 100 D.P.R. 1009 (1972); *Viñas v. Pueblo Supermarket*, 86 D.P.R. 33 (1962); *Palmer v. Barreras*, 73 D.P.R. 278 (1952), y *Echevarría v. Despiau*, 72 D.P.R. 472 (1951).

La norma del *fireman's rule* se ha extendido a los policías. R.D. Zimmerman, *Negligence Actions by Police and firefighters: A Need for a Professional Rescue Rule*, 66 Calif. L. Rev. 585 (1978); M.F. Sisson, *The Fireman's Rule: Open Season on Firemen and Policemen*, 14 U. West L.A. L. Rev. 89 (1982); *Berko v. Ferda*, 459 A.2d 663 (1983).

En términos generales postula que por el carácter inherentemente riesgoso de sus labores los policías, al igual que los bomberos, están impedidos de reclamar contra aquellas personas cuya negligencia o descuido causaron el riesgo que les infligió el daño. *Soto v. Tropigas de P.R.*, supra.

cido sin causa, *prescindiendo en absoluto de aquellas nociones de culpa e imputabilidad,* y dejando en segundo término al agente provocador de la atribución patrimonial. La pretensión por daños necesita fijar la relación de causa a efecto entre el agente provocador y el daño. La pretensión por enriquecimiento fija dicha correlación entre el patrimonio del enriquecido y el del empobrecido. En la primera, la reparación se extiende al daño total, sin limitación de derecho, salvo algunas excepciones legales. En la segunda, la restitución tiene su objeto y su medida —salvo desviaciones concretas— en la cuantía del enriquecimiento. El daño puede constituir, a la vez, *damnum emergens* (daño positivo) y *lucrum cessans* (lucro frustrado). El enriquecimiento puede producirse por un aumento del patrimonio (*lucrum emergens*) o por una no disminución del patrimonio (*damnum cessans*). La pretensión por daños nace siempre de un hecho ilícito. El daño se puede producir por acción o por omisión. El enriquecimiento —como es secundario el agente provocador—, sólo positivamente, por desplazamiento de valor de un patrimonio a otro". (Énfasis suplido.) Albaladejo, *op. cit.,* págs. 23–24.

 Por su parte, Puig Brutau apunta que "en la acción de indemnización de daños y perjuicios por acto ilícito la indemnización se mide por el daño experimentado por la víctima, independientemente de que haya o no proporcionado beneficios al responsable, mientras que la restitución que procede en caso de enriquecimiento injusto no puede ser superior al aumento patrimonial experimentado por la otra parte". Puig Brutau, *op. cit.,* pág. 45.

 Las peculiaridades de ambas acciones ponen de manifiesto en el caso de autos la naturaleza del enriquecimiento experimentado por el Estado. El enriquecimiento puede ocurrir en dos (2) modalidades diferentes: el positivo o

aumento en el patrimonio (*lucrum emergens*), o el negativo o disminución del patrimonio (*damnum cessans*). El negativo (*damnum cessans*) se apuntala en la premisa de que un *no gasto* equivale a un ingreso. En otras palabras, en la medida en que alguien sufre una pérdida que ordinariamente debería padecer otro, el primero le ahorra un gasto al segundo. Esa situación no tiene cabida en un sistema donde impera lo justo y debe ser remediada.

Al concluir que no medió enriquecimiento alguno por parte del Estado, el tribunal a quo produjo la analogía de un agente de la Policía que pierde su vida mientras se desempeña en sus funciones. No cabe la misma. El bien material aquí afectado y la vida de un policía no son valores intrínsecamente comparables. Además, en cuanto a la pérdida de la vida o daños físicos, nuestro ordenamiento provee beneficios para el policía y para su familia a través de la Ley de Pensiones por Incapacidad o Muerte en el Cumplimiento del Deber y de la Ley de Compensaciones por Accidentes del Trabajo.(3) Sin embargo, con relación a daños patrimoniales no existe protección alguna. A su vez —distinto a lo que ocurre en caso de pérdida de una vida— los daños experimentados por el automóvil son comprobables pecuniariamente, cuantificables y totalmente recobrables. Resolvemos que, en efecto, en este caso peculiar ocurrió un enriquecimiento por parte del Estado en su modalidad de *damnum cessans*.

El *tercer* requisito de la doctrina del enriquecimiento injusto es la correlación o vínculo de conexión suficiente entre el empobrecimiento y el enriquecimiento. No siempre la relación es directa, pues en ocasiones interviene un tercero en los desplazamientos patrimoniales. Albaladejo, *op. cit.*, pág. 29. Sobre este particular se ha señalado:

---

(3) Ley Núm. 127 de 27 de junio de 1958, según enmendada, 25 L.P.R.A. sec. 376 y ss., y Ley Núm. 45 de 18 de abril de 1935 (11 L.P.R.A. sec. 1 y ss.), respectivamente.

La necesaria relación entre empobrecimiento y enriquecimiento no exige necesariamente que el efecto se produzca como resultado de una prestación *directa* del empobrecido al enriquecido. *Lo decisivo no es la relación directa entre ambos, sino la existencia de un vínculo de conexión suficiente entre el patrimonio que ha sufrido la pérdida y el que ha experimentado el beneficio.* El desplazamiento no ha de haberse producido mediante un rodeo a través de un patrimonio ajeno, sino que ha de ser *una misma circunstancia la que haya causado por un lado la pérdida y por otro la ganancia.* Es el requisito que la doctrina alemana llama de la inmediatez (*Unmittelbarkeit*) del desplazamiento, que no ha de entenderse en el sentido de que el fenómeno se produzca entre el perjudicado y el beneficiado, sino en el de que un mismo hecho o circunstancia ha de haber dado lugar a la pérdida y a la ganancia. (Énfasis suplido.) Puig Brutau, *op. cit.*, pág. 57.

Es incorrecta, pues, la alegación del Estado acogida por el juez de instancia en lo relativo a que sólo es posible establecer el nexo para la acción de enriquecimiento en el patrimonio de los que asaltaron y robaron el automóvil del demandante recurrente Ortiz Andújar. La proposición de que los asaltantes fueron los únicos que se lucraron injustamente es trunca.

Si bien es cierto que los asaltantes se beneficiaron con el uso, desmantelamiento y *posible* venta de las piezas del automóvil robado, ello no excluye que reconozcamos el enriquecimiento obtenido en el patrimonio del Estado. La exigencia de este requisito es la *inmediatez* del desplazamiento, esto es, *que la ganancia y la pérdida surjan del mismo hecho o circunstancia.* El reconocimiento doctrinal de la posible intervención de un tercero como instrumento ocasional de la transferencia es relativa, de naturaleza circunstancial, que no excluye la existencia de una inmediatez en el desplazamiento. Alberto de Rovira Mola, *supra*, pág. 575. Indudablemente, este tercer requisito se cumple en el caso. Tanto la pérdida sufrida por el agente Ortiz Andújar como la ganan-

cia obtenida por el Estado son producto de unas mismas circunstancias.

■ Sobre el *cuarto* requisito, la ausencia de causa, el jurista Guaroa Velázquez nos advierte: "Es preciso subrayar que este término 'causa' no tiene aquí la acepción que se le da en materia contractual, sino que toma en el significado de acto jurídico que explica, que justifica la adquisición de un valor. Como dicen Colin y Capitant: 'El enriquecimiento no debe derivar su fuente de un acto jurídico que legitime su adquisición.' Así, el enriquecimiento no es injusto siempre que tenga como equivalente una prestación contractual o título oneroso o gratuito, o *que haya sido obtenido como cumplimiento de una obligación legal o natural*." (Escolio omitido y énfasis suplido.) Velázquez, *supra*, págs. 181–182.

■ Desde prismas diversos, el concepto de causa del enriquecimiento ha sido objeto de serios debates entre juristas.[4] No obstante, la doctrina mayoritaria en este mo-

---

[4] "Otra figura del derecho civil patrimonial que encarna un valor que, tomado en abstracto es, sin duda, de validez intrínseca máxima es la del enriquecimiento injusto como fuente de las obligaciones. Ciertamente la finalidad de todo el derecho debería ser la consecución de la justicia. Pero, ¿cuál es la concepción de justicia que permea la figura del enriquecimiento injusto como fuente de las obligaciones, según la concepción ideológica que le sirvió de base al Código? No se trata de lo que cada uno pueda entender como justo, sino de lo que el legislador de entonces entendía por justo. Así, la menguada remuneración que le da el patrono al obrero, producto de la relación de producción sobre la cual está montado todo el esquema de la propiedad privada y de la apropiación de la plusvalía, ha sido ya catalogada como 'justa' por el legislador, mientras los sectores productivos mayoritarios, los trabajadores, están convencidos de lo contrario. Por ello es que algunos comentaristas prefieren utilizar el término enriquecimiento sin causa, que alude a los supuestos de hecho reconocidos como capaces de justificar adquisiciones patrimoniales —las causas— y no a un criterio como el de justicia. Desde nuestra perspectiva, en cambio, no tenemos por qué aceptar las concepciones de lo justo que tuvieran las clases dominantes de fines del siglo XIX, ni las del momento actual. Un enriquecimiento podrá fundamentarse en un título (causa) reconocido por el derecho vigente, pero ello no necesariamente lo libra de ser un enriquecimiento injusto. Como juristas tenemos la responsabilidad y el

mento se inclina a reconocer situaciones en las que no se puede aplicar la acción de enriquecimiento injusto debido a que la atribución patrimonial posee una causa válida. Entre las mismas se señalan: cuando existe un convenio legal o un testamento y cuando se ejercita un derecho sin abuso. Q.M. Scaevola, *Código Civil*, Madrid, Inst. Ed. Reus, 1961, T. XXX, pág. 681; J.M. Manresa, *Comentarios al Código Civil Español*, Madrid, Ed. Reus, 1973, T. XII, pág. 836.

Según esta vertiente, se entiende que el tribunal de instancia recurriera al contrato de trabajo existente entre el Estado y el agente Ortiz Andújar para rechazar su reclamo. Según este criterio, el fundamento de la relación contractual se encuentra en la Sec. 19.2(6) del Reglamento de Personal de la Policía de Puerto Rico, que dispone:

> Los miembros de la Policía conservarán su condición de tales en todo momento y en cualquier sitio en que se encontraran dentro de la jurisdicción del Estado Libre Asociado, incluyendo cuando estén libres. A estos efectos, tendrán todos los deberes y atribuciones que por esta ley se imponen a los miembros de la Policía de Puerto Rico. *Exhibit* XV, pág. 48.

Un análisis sosegado y profundo de esta disposición reglamentaria nos lleva a concluir que no tiene el alcance pretendido. El Reglamento de Personal de la Policía de Puerto Rico establece las guías de la relación patrono-empleado e incorpora el principio de mérito a la administración de personal en dicho cuerpo. De ninguna manera prevee ni regula situaciones de pérdida patrimonial de bienes privados. Aun cuando los miembros de la Policía conserven esa condición en todo momento, ello no significa —ni expresa ni implícitamente— la existencia de un contrato que los obligue a arries-

---

deber de conformar el derecho con la justicia, lo cual implica que en algunos casos haya que combatir abiertamente la norma vigente, incluso la de rango constitucional." M. Godreau, *Un esquema para el análisis de problemas de Derecho civil patrimonial*, LV Rev. Jur. U.P.R. 9, 48 (1986).

gar sus bienes privados sin resarcimiento alguno. Por ende, el enriquecimiento obtenido por el Estado no tiene causa que lo justifique. Aunque es una redundancia, es claro que los demandantes recurrentes Ortiz-Rivera no actuaron de mala fe.

Por último, no encontramos precepto legal alguno que excluya la aplicación de esta justiciera doctrina al cuerpo de la Policía. No queda vulnerado precepto alguno de orden público de génesis constitucional o estatutario. Por el contrario, está en sintonía con el interés público de que el Estado ofrezca la mayor protección policíaca posible y a tono con el espíritu que inspiró la Orden Ejecutiva de 12 de febrero de 1987, que crea un *Programa de premios anuales por excelencia para los miembros del Cuerpo de la Policía de P.R.* con el fin de estimular y reconocer el talento de sus miembros en la urgente misión de prevenir, descubrir y perseguir el crimen.[5]

## IV

■ Recapitulando, en consonancia con la política pública establecida en el Reglamento de Personal de la Policía de Puerto Rico, el agente Ortiz Andújar cumplió en la forma más íntegra, honrosa y extraordinaria con el deber que le imponía las funciones de su cargo. Su contrato con el Estado no le exigía, a pesar del riesgo permanente que la naturaleza de ese trabajo conlleva, exponerle al menoscabo y detrimento de su patrimonio privado. No es práctica, como tampoco requisito, que los servidores a cargo de la seguridad del país hagan uso de sus bienes privados —como lo es su automóvil— para desempeñar las funciones de su trabajo. En ausencia de la doctrina del enriquecimiento injusto no existía,

---

[5] Este programa fue avalado por la Asamblea Legislativa, la cual mediante la Ley Núm. 72 de 1ro de julio de 1987 (13 L.P.R.A. sec. 3022(b)(20)) declaró exento de contribución los ingresos por tales premios.

pues, garantía de indemnización cuando, como en el caso que nos ocupa, se sufre un daño patrimonial que obedece al sentido íntimo del mejor cumplimiento del deber. El esquema estatutario vigente sólo compensa los daños físicos, incluso la muerte. Irónicamente esa protección no se extiende al quebranto de su patrimonio.

Flaco servicio hacemos a la justicia y muy mal retribuimos un servicio tan riesgoso —como el del policía— cuando desatendemos un reclamo tan justificado. Un trabajador, padre de familia, impulsado exclusivamente por el deseo de cumplir con su deber, expone y sufre una merma en su patrimonio y se desoye su justa solicitud de que se le brinde al menos el reconocimiento parcial de compensarle por los daños materiales recibidos. Nuestra sociedad, asediada y deteriorada por la criminalidad, clama como un acto de justicia ese resarcimiento.

*Se dictará la correspondiente sentencia.*

Los Jueces Asociados Señores Rebollo López y Hernández Denton concurren con el resultado sin opinión escrita. El Juez Presidente Señor Pons Núñez disiente sin opinión escrita.