Colón Birriel, Juez Ponente
*755 TEXTO COMPLETO DE LA SENTENCIA
I
La apelante AK Tres, Inc. ("AK Tres") nos solicita la revocación de una sentencia dictada por el Tribunal de Primera Instancia, Sala Superior de Guayama, el 30 de mayo de 1996. Mediante el referido dictamen dicho foro "desestimó la causa de acción" y dictó sentencia de archivo con perjuicio, en el caso que por cobro de dinero presentara la entonces demandante AK Tres contra el aquí apelado, entonces demandado, Municipio de Cayey ("el Municipio").
n
El 27 de octubre de 1992, AK Tres instó demanda contra el Municipio, en cobro de dinero ante el entonces Tribunal Superior, Sala de Guayama, en reclamación de una suma de dinero ascendente a $72,944.28, alegadamente adeudados por el Municipio, por concepto de obras realizadas bajo el proyecto de subasta número 88-AB-14-002; y cantidad que alegadamente no le había sido satisfecha a pesar de los esfuerzos realizados para su cobro. El 25 de enero de 1993, el Municipio contestó la demanda, alegando que nada adeudaba, por cuanto había pagado totalmente las obras realizadas, según los términos del contrato y la subasta celebrada.
El 10 de noviembre de 1993, AK Tres y el Municipio, por conducto de sus respectivos representantes legales, sometieron el asunto en controversia al tribunal, mediante unas "Estipulaciones de Hechos", las que resultarían vinculantes para las partes. Las estipulaciones consistieron de lo siguiente:

"1. AK Tres Inc. es una corporación debidamente organizada al amparo de la Ley General de Corporaciones del Estado Libre Asociado de Puerto Rico.

2. El Municipio de Cayey es una Corporación Municipal creada al amparo de la Ley de Municipios de Puerto Rico.

3. La demandante AK Tres Inc. resultó beneficiada de la subasta del Proyecto 88A-B-14-002 para la reconstrucción de aceras, postes eléctricos y otras facilidades en el Municipio de Cayey.

4. Dicho proyecto se contrató el día 30 de octubre de 1991 por la suma básica de $235,000.00.

5. En dicho proyecto al[sic] demandante instaló 58 postes eléctricos decorativos.

6. Al hacer la cotización, la demandante AK Tres Inc. incurrió en error al confundir la página 12 de los Planos de Construcción, la cual estaba modificada y declarada nula y no cerciorarse de la página 12A que incluía la instalación de 32 postes adicionales, es decir la demandada cotizó para la instalación de 34 postes y las correspondientes aceras sin percatarse de que se requería la instalación de 24 postes adicionales, la excavación de 563.30 metros adicionales, la demolición de 55.18 metros cuadrados de aceras y la instalación de 427.02 metros lineales de cables soterrados. Estos trabajos tenían un valor de $72,944.28. La demandante a pesar de que había hecho su estimado de obra a base de lo expuesto en los planos sin tomar en consideración la página 12A cumplió a cabalidad con el contrato.

7. La parte demandante ha hecho múltiples gestiones reclamando al Municipio de Cayey el pago por la diferencia de las obras.

8. El contrato original se hizo por la cantidad de $235,000.00, hubo cambio de órdenes por la cantidad de $10,057.32 y disminuciones en las obras por $12,072 para una diferencia neta de $2,014.68 y el contrato ajustado ascendía a la suma de $232,985.32.

*756
9. La demandante AK Tres Inc. terminó el Proyecto a satisfacción del Municipio de Cayey."

Luego de las partes someter los memorandos de derecho que ordenara el Tribunal de Primera Instancia, el 30 de mayo de 1996, desestimó la causa de acción de AK Tres y dictó sentencia decretando el archivo del caso con perjuicio, sin la imposición de costas y honorarios de abogado.
Inconforme con el referido dictamen, AK Tres recurre ante nos, imputándole al referido tribunal haber incurrido en el siguiente error:

"Erró el Honorable Tribunal de Primera Instancia al resolver que la parte demandante apelante no tenía derecho a recobrar lo real y efectivamente trabajado, al resolver que a los hehcos [sic] del caso no le aplican los principios de enriquecimiento injusto y de reprocidad de las obligaciones".

III
La controversia ante nos a ser resuelta, es si el Tribunal de Primera Instancia erró al no aplicar, bajo los hechos particulares del presente caso, la doctrina de enriquecimiento injusto. Resolvemos que no; veamos.
La doctrina de enriquecimiento injusto es un principio general de derecho que forma parte de nuestra tradición civilista. Se trata de una regla de derecho basada en la equidad, que permea todas las áreas del derecho en Puerto Rico, incluyendo el derecho público. En Puerto Rico, aunque la figura del enriquecimiento injusto está subordinada en la figura de los cuasi contratos y en otras disposiciones del Código Civil, ésta tiene rango de un principio general de derecho que opera en todo el ámbito del derecho.
La referida doctrina aplica cuando la ley no ha previsto una situación en la que se produce un desplazamiento patrimonial que no tiene una explicación razonable en el ordenamiento vigente. La doctrina atiende la atribución sin causa, esto es, el enriquecimiento de un patrimonio y el correspondiente empobrecimiento de otro, sin causa en ley. Este enriquecimiento sin causa es el fundamento para una acción restitutoria: el que sin causa legítima se enriquece.a costa de otro, está obligado a la restitución. Así pues, los requisitos para que esta doctrina sea aplicable son los siguientes: 1) existencia de un enriquecimiento; 2) un correlativo empobrecimiento; 3) la conexión entre ese empobrecimiento y el enriquecimiento; 4) falta de causa que justifique el enriquecimiento; y 5) inexistencia de un precepto legal que excluya la aplicación del enriquecimiento sin causa. Andújar v. E.L.A., 122 D.P.R. 817, 823 (1988), citando a J. Santos Briz, Comentarios al Código Civil y Compilaciones Forales, (dirigido por M. Albaladejo), Tomo XXIV, Madrid, 1984, págs. 27-28. Municipio v. Soto, 131 D.P.R. _ (1992), 92 J.T.S. 97; Hatton v. Municipio de Ponce, 134 D.P.R. _ (1994), 94 J.T.S. 2.
En Plan de Salud v. Alcalde de Cabo Rojo, 114 D.P.R. 697 (1983) y en Morales v. Municipio de Toa Baja, 119 D.P.R. 682 (1987), nuestro Tribunal Supremo señaló los límites de la doctrina que rigen el enriquecimiento sin causa, sin pretender agotar el catálogo de los múltiples principios que la rigen, a saber: "1) La doctrina del enriquecimiento injusto es aplicable, dentro de determinadas situaciones a los órganos administrativos, 2) La aplicación de la doctrina dependerá de las circunstancias específicas de cada caso. El Código Civil no agota las situaciones a las que la doctrina se extiende. El principio jurídico del enriquecimiento sin causa tiene sus límites en el derecho civil, aunque el Código Civil no agota las situaciones a las que se extiende esta doctrina; 3) La doctrina de enriquecimiento injusto no es invocable cuando su efecto es vulnerar un principio importante de orden público encarnado en la Constitución o las leyes del país. Bajo este principio se han reconocido los principios rectores en materia de contratación consagrados en los artículos 4, 1207 y 1227f, 31 L.P.R.A. sees. 4, 3372 y 3432, respectivamente del Código Civil; 4) La doctrina es invocable, entre otras circunstancias, cuando no se han observado ciertas formalidades de ley fácilmente subsanables o susceptibles de haber sido ejecutadas con el asesoramiento debido."
En conclusión, la doctrina de enriquecimiento injusto así como otras doctrinas de equidad, pueden aplicarse a favor de una parte, contra el Estado o sus instrumentalidades, siempre que los hechos y circunstancias del caso así lo justifiquen y no se violenten la política pública y estatutos especiales en pro del orden público. Morales v. Municipio de Toa Baja, supra, a la pág. 692.
*757 Con este marco conceptual sobre la doctrina del enriquecimiento injusto, procedemos a analizar su aplicación a los hechos del presente caso, con particular atención a si ello violentaría la política pública del Estado y de los estatutos especiales relacionados a materia de presupuestos, contratos y desembolsos, según están éstos contemplados en la vigente "Ley de Municipios Autónomos del E.L.A. de Puerto Rico", Ley Núm. 81 de 30 de agosto de 1991, 21 L.P.R.A. see. 4001 etseq.
En lo pertinente y según se desprende de la antes citada ley, el año fiscal de todo municipio significa todo período de doce (12) meses consecutivos entre el primer (1er) día del mes de julio de cada año natural y el día treinta (30) de junio del año natural siguiente. Corresponde al Alcalde de cada municipio preparar el proyecto de resolución del presupuesto general balanceado de ingresos y gastos de su municipio para cada año fiscal, el cual deberá presentar ante la Asamblea Municipal, junto a un mensaje presupuestario, no más tarde del 31 de mayo de cada año en una sesión extraordinaria de la Asamblea especialmente convocada para tal presentación. La Asamblea deberá considerar el proyecto de resolución de presupuesto general del municipio durante una sesión ordinaria y aprobarlo y someterlo al Alcalde no más tarde del 13 de junio de cada año. 21 L.P.R.A. see. 4301 y 4304.
El proyecto de resolución del presupuesto general deberá contener lo siguiente: (a) un mensaje presupuestario que incluirá, entre otras cosas, una relación de los proyectos de obras y mejoras permanentes a realizarse dentro del año fiscal y en años fiscales subsiguientes, en orden de prioridad respecto a las necesidades de la comunidad, así como las fuentes de financiamiento para las mismas; y (b) un plan financiero que deberá proveer, entre otras cosas: "(1) un plan financiero completo para el año fiscal que corresponda; (2) un resumen general de los gastos municipales por concepto de sueldos, jornales, materiales, servicios y obras permanentes para el año fiscal próximo; (3) un estimado detallado de los recursos para atender los gastos municipales, y (4) un estado comparativo de las asignaciones propuestas con las del año anterior". 21 L.P.R.A. see. 4302. La Asamblea Legislativa puede insertar nuevas partidas y aumentar o disminuir las propuestas. 21 L.P.R.A. 4303. Una vez aprobado, el presupuesto regirá durante el año fiscal aunque, como regla general, el Alcalde puede de haber sobrantes disponibles no comprometidos, autorizar transferencias de crédito entre partidas presupuestarias dentro de la dependencia dirigida por dicho funcionario. "Las asignaciones para el pago de la deuda pública y sus intereses son intransferibles, a menos que se trate de algún sobrante liquidado después de cubierta totalmente la obligación, certificado dicho sobrante por el Departamento de Hacienda o el Centro de Recaudaciones de Ingresos Municipales". 21 L.P.R.A. see. 4308. Para un Municipio poder válidamente obligarse, es menestar la existencia de fondos así presupuestados. Por ende, "no podrá gastar u obligarse en un año fiscal cantidad alguna que exceda de las asignaciones y los fondos autorizados por ordenanza o resolución para dicho año. Tampoco se podrá comprometer, en forma alguna, en ningún contrato o negociación para pago futuro de cantidades que excedan a las asignaciones y los fondos". 21 L.P.R.A. 4354. No obstante lo anterior, en casos de emergencia debidamente justificados el Alcalde podrá autorizar al funcionario a cargo de las finanzas para incurrir en gastos y obligaciones en exceso de los créditos asignados, hasta una cantidad equivalente al cinco por ciento (5%) de la suma total del presupuesto de gastos de funcionamiento del municipio del año fiscal en que se emita tal autorización. 21 L.P.R.A. 4356.
Por otro lado, en cuanto al procedimiento de subastas se refiere, el Art. 11.01 de la Ley de Municipios Autónomos, 21 L.P.R.A. see. 4501, dispone, en lo pertinente, en su inciso (b): que en "[tjoda obra de construcción o mejora pública por contrato que exceda de cuarenta mil ($40,000.00) dólares" el municipio cumplirá con el procedimiento de subasta pública.
El propósito de la subasta pública establecida en esta sección es invitar a la competencia y como resultado obtener la mayor ventaja y el mejor contrato a los mejores precios posibles, para evitar así la posibilidad de favoritismos, descuidos, extravagancia y corrupción. Op. Sec. Just. Núm. 27 de 1988. Entre los criterios de adjudicación, tenemos que, cuando de construcciones se tratare, la junta de subasta adjudicará a favor del postor razonable más bajo.
En el presente caso, AK Tres presentó su acción como una de cobro de dinero, para recobrar del Municipio la suma de $72,944.28 correspondientes a los trabajos que realizó bajo el contrato de construcción y los cuales por negligencia u error, no fueron tomados en consideración por ésta al hacer su cotización. Alegadamente el error *758 consistió, en que por confusión utilizó la página doce (12) de los planos de construcción, la cual estaba modificada y declarada nula, en lugar de la página 12A, la que incluía la instalación de 24 postes adicionales, la excavación de 563.30 metros adicionales de aceras y la instalación de 427.02 metros lineales de cables soterrados. Fundamentó su acción en el principio de derecho de que nadie debe enriquecerse injustamente a costa de otros.
Por los fundamentos que expondremos a continuación, resolvemos que la doctrina de enriquecimiento injusto no es de aplicación a los hechos del presente caso.
En primer lugar y según lo expresado, dicha doctrina no se aplicará cuando resulte contrario a una clara política pública plasmada en un estatuto o en la Constitución. En el presente caso de acceder a lo solicitado por AK Tres, se violentaría la política pública y estatutos específicos relacionados a la asignación de presupuestos y desembolsos de fondos, antes señalados, plasmados en la referida Ley de Municipios Autónomos, supra. Se frustrarían, además, los propósitos del procedimiento de subastas, que según la opinión del Secretario de Justicia ya señalada es "invitar a la competencia y como resultado de ello obtener la mejor ventaja y el mejor contrato a los mejores precios posibles para evitar la posibilidad de favoritismos, descuidos, extravagancia y corrupción". Es decir, de haber AK Tres incluido en su cotización el trabajo adicional que realizó, quizás la buena pro de la subasta, no se le hubiere otorgado a ésta y hubiese sido favorecido algún otro licitador, en igualdad de circunstancias.
En fin, el Municipio pagó totalmente a AK Tres por las obras realizadas y cotizadas, según los términos del pliego de subasta y del contrato llevado a cabo y firmado por ambas partes, los que no fueron objetos de enmiendas posteriores. El Municipio, correctamente, se negó a pagar por una suma que no formó parte de la cotización presentada por AK Tres y la cual, por consiguiente, no fue tomada en consideración para adjudicar la buena pro de la subasta y que, posiblemente, tampoco formó parte del presupuesto de dicho Municipio para el referido proyecto. Ocasio v. Alcalde Municipio de Maunabo, 121 D.P.R. 37 (1988); Morales v. Municipio de Toa Baja, supra. Esto es, el Municipio pagó por lo que realmente subastó y contrató originalmente con AK Tres, conforme a la ley. Ortiz Andújar v. E.L.A., supra; Municipio v. Soto, supra; Hatton v. Municipio de Ponce, supra.
En segundo y último lugar, aun reconociendo la existencia material del empobrecimiento de AK Tres, la acción de enriquecimiento injusto quedaría excluida en el presente caso, por razón de que el enriquecimiento del Municipio fue imputable a la negligencia exclusiva de AK Tres. L. Diez-Picazo Fundamentos del Derecho Civil Patrimonial, Madrid, Ed. Tecnos, 1979, Vol. 1, pág. 80. Morales v. Municipio de Toa Baja, supra, a la pág. 693 (VOTO PARTICULAR DE CONFORMIDAD DEL JUEZ HERNANDEZ DENTON). Es decir, el hecho de que AK Tres se haya equivocado en la cotización por haber alegadamente confundido una de las páginas de los planos de construcción, y haber utilizado una página errónea y no la enmendada, no puede ser razón o motivo para que el Municipio le pague.
Por los fundamentos anteriormente expuestos se confirma la sentencia dictada el 30 de mayo de 1996, por el Tribunal de Primera Instancia, Sala Superior de Guayama.
Lo acordó el Tribunal y lo certifica la señora Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 96DTA180
1. See. 4. Actos contrarios a la ley; renuncia de derechos.
Son nulos los actos ejecutados contra lo dispuesto en la ley, salvo los casos en que la misma ley ordene su validez.
Los derechos concedidos por las leyes son renunciables, a no ser esta renuncia contra la ley, el interés o el orden público, o en perjuicio de tercero.
*759 2. "Sec. 3372. Cláusulas y condiciones permisibles

Los contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que na sean contrarios a las leyes, a la moral, ni al orden público."

3. "See. 3432. Contratos sin causa; causa ilícita

Los contratos sin causa, o con causa ilícita, no producen efecto alguno. Es ilícita la causa cuando se opone a las leyes o a la moral."