Córdova Arone, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
Los demandantes en el caso de epígrafe recurren ante nos apelando una sentencia del entonces Tribunal Superior, Sala de Ponce donde se declara sin lugar una demanda contra el Departamento de Hacienda, y se establece que el Departamento tiene derecho a cobrar ciertas contribuciones *1172 adeudadas. Confirmamos la sentencia del antes Tribunal Superior.
Para sostener nuestra sentencia, es preciso hacer un recuento de los hechos que dieron lugar al presente pleito y el derecho vigente aplicable al mismo.
I
El 6 de junio de 1993, la Sra. María A. Amador por sí y en representación de su esposo, Sr. Blas Contreras, solicitó del Departamento de Hacienda de Puerto Rico que, a tenor con las disposiciones de la Ley Núm. 24 de 8 de junio de 1962, 13 L.P.R.A. sees. 402 y ss., se le concediera exención contributiva sobre una propiedad que alegadamente pertenecía a ambos. Dicha propiedad está designada con el número "D-5" de la Urbanización Playa Santa del Municipio de Guánica.
La solicitud de exención era retroactiva a los años contributivos comprendidos de 1979-80 al 1983-84, inclusive. La misma fue acompañada con una declaración jurada de la Sra. Amador en la cual aseguraba que ella y su esposo habían residido en la propiedad mencionada desde el mes de octubre de 1976 hasta el mes de junio de 1983 en calidad de dueños. Incluía, además, otros documentos que acreditaban que en la mencionada propiedad se habían instalado servicios de luz y agua a nombre de los esposos Contreras Amador.
A raíz de esta solicitud y de los documentos que la acompañaban, el Secretario de Hacienda les concedió a los Contreras Amador la exención contributiva sobre la propiedad.
El día 29 de junio de 1983, según surge de la Escritura Número 93 otorgada ante la notario Estela I. Valles Acosta, los esposos Eduardo A. Méndez Mayoral y Ana María Shepard adquirieron de Senior Corp. la propiedad objeto del presente pleito. Esta propiedad fue obtenida por los esposos Méndez Shepard por cesión o dación en pago por ciertos servicios prestados a la corporación y en cumplimiento de acuerdos contenidos en un estipulación aprobada por la Corte de Quiebras.
Ese mismo día, 29 de junio de 1983, los esposos Méndez Shepard le cedieron la propiedad anteriormente descrita a los esposos Contreras Amador. Este negocio jurídico surge de la Escritura Número 3 otorgada en esa fecha ante el Ledo. José R. Otero.
Lo anterior demuestra que para la fecha en que la Sra. Amador solicitó la exención contributiva la propiedad identificada con el número "D-5" de la Urbanización Playa Santa, el título de la misma era Senior Corp. El 7 de julio de 1983, mediante la Escritura de Compraventa Número Siete (7), otorgada ante el Ledo. Pedro E. Muñiz Ramos, los esposos Contreras Amador vendieron la propiedad en controversia al matrimonio compuesto por el Sr. Luis Manuel López de Victoria y la Sra. Olvido Santiago Irizarry. En la escritura de compraventa los vendedores manifestaron haber satisfecho las contribuciones sobre la propiedad inmueble objeto del negocio incluyendo las correspondientes al año contributivo 1983-1984. Manifestaron, además, que a ese momento no se había presentado al Registro de la Propiedad la certificación de cancelación del Departamento de Hacienda.
El 14 de julio de 1983, la Sra. Olvido Santiago solicitó al Departamento de Hacienda exención contributiva sobre la propiedad comprada. La exención fue concedida con carácter prospectivo a partir del año contributivo 1984-85.
Posteriormente, el Departamento de Hacienda hizo una revisión del status contributivo de la propiedad "D-5" de la Urbanización Playa Santa, percatándose de que la exención contributiva concedida a los esposos Contreras Amador había sido otorgada erróneamente ya que para la fecha en que fue otorgada, éstos no eran dueños del bien en cuestión. Tampoco lo eran durante los años a los cuales se aplicaría la exención retroactivamente. Además, según la investigación realizada por Hacienda, la propiedad no estaba siendo utilizada con fines residenciales.
A la luz de esta investigación, el Departamento de Hacienda emitió el 1 de agosto de 1988, una certificación de deuda sobre la propiedad en controversia. Dicha certificación informaba a los actuales dueños del inmueble, los esposos López Santiago, la deuda contributiva sobre la propiedad correspondiente a los años contributivos desde 1979-80 al 1983-84, inclusive. A la fecha de la notificación la deuda ascendía a la suma de $7,380.61.
*1173 El 12 de septiembre de 1988, los esposos López Santiago radicaron una demanda contra los esposos Contreras Amador, la sociedad de gananciales compuesta por éstos y el Departamento de Hacienda. En la demanda se solicitaba al Tribunal que dictara una sentencia declaratoria a los fines de determinar si las contribuciones realmente se adeudaban y, de ser así, a quién correspondía pagar las mismas. Incluía, por otro lado, una acción por daños y perjuicios, y una acción en cumplimiento específico de contrato.
Los esposos Contreras Amador contestaron la demanda negando los hechos esenciales de la misma, y presentaron una reconvención. Posteriormente, los demandantes desistieron de su reclamación por concepto de daños y perjuicios, y los esposos Contreras Amador desistieron de su reconvención.
El 4 de enero de 1989, luego de iniciado el pleito, el Director del Negociado de Contribuciones sobre la Propiedad, Sr. Luis Magín Nieves, expidió nuevamente por error, una certificación de valores contributivos firmada por Edith Otero Bracero. En ella se estableció que, según indicaban los récords del Departamento de Hacienda, la propiedad disfrutaba de exoneración contributiva en un 100% y que la misma aparecía exonerada a nombre de Blas Contreras Peralta por los años de 1979-80 hasta 1983-84.
En esta certificación se expresó, no obstante, que si posteriormente se hacía una investigación y se comprobaba que la propiedad no cumplía con los requisitos para disfrutar la exención o exoneración concedida se procedería a expedir los recibos retroactivos para los años correspondientes a la deuda. 
Finalmente, luego de una serie de trámites procesales y de la celebración de una vista en su fondo, el entonces Tribunal Superior dictó sentencia el 31 de marzo de 1994, mediante la cual se declaró sin lugar la demanda incoada contra el Departamento de Hacienda. Nos dice el Tribunal Superior, inter alia:

"[EJntendemos que los esposos López de Victoria son responsables a tenor con el Art. 200 de la Ley Hipotecaria, (30 LPRA - See. 2651) [sic] del pago de las contribuciones adeudadas. Estamos [sic] comientes de que al adquirir la propiedad, estos [sic] estaban bajo la creencia de que la misma estaba excenta [sic] de contribuciones pero en este momento no podemos responsabilizar por el pago de las contribuciones a los esposos Contreras-Amador quienes señalaron que la propiedad estaba excenta [sic] de contribuciones porque así lo creyeron.

La Ley Hipotecaria le concede el derecho al Departamento de Hacienda de cobrar dichas contribuciones, incluso de embargar el inmueble para cobrarlas.

La excención [sic] contributiva no procedía puesto que los esposos Contreras-Amador no cualificaban y sus compradores deben pagarle las contribuciones al Departamento de Hacienda."

El Tribunal Superior añadió en su sentencia que cualquier reclamación que tuviesen los demandantes a los fines de que los esposos Contreras Amador les respondiesen del pago de las contribuciones debía ser litigado en un pleito independiente, si así lo deseaban.
Oportunamente, los demandantes radicaron una solicitud de reconsideración y una moción solicitando determinaciones de hechos adicionales. Ambas fueron denegadas por el Tribunal de Primera Instancia el 31 de enero de 1995.
Ante esta situación los esposos López Santiago recurren ante nos argumentando que el Tribunal a quo incidió, en síntesis, al centrar la controversia del pleito dentro del ámbito de un error administrativo y resolver que el Departamento de Hacienda tiene derecho a cobrar las contribuciones adeudadas. Alegan los demandantes-recurrentes que en este caso se debió activar la doctrina de "estoppel" contra el Departamento de Hacienda o, en la alternativa, los esposos Contreras Amador deben responder por el pago de las contribuciones alegadamente adeudadas.
Luego de examinar toda la documentación sometida por las partes estamos en posición de resolver.
*1174 II
El 8 de junio de 1962 se aprobó la Ley Núm. 24 que, entre otras cosas, enmendó la Ley Núm. 269 de 11 de mayo de 1949. En cuanto al asunto que nos ocupa en este momento la Ley Núm. 24 establece:

"Los dueños de propiedades dedicadas para fines residenciales quedan exonerados del pago de la contribución impuesta en virtud de las disposiciones de esta ley y de las contribuciones sobre propiedad impuestas por los municipios de Puerto Rico correspondientes al año 1962-1963 y a cada año económico siguiente en una cantidad equivalente a la contribución impuesta sobre dichas propiedades hasta quince mil dólares de valoración...

Se entenderá que se dedica para "fines residenciales" cualquier estructura que el día 1ro. de enero de cada año esté siendo utilizada, o esté disponible para ser utilizada, como vivienda por su dueño o familia, o cualquier nueva estructura construida para la venta y tasada para fines contributivos a nombre de la entidad o persona que la construyó si a la fecha de la expedición del recibo de contribuciones está siendo utilizada o disponible para ser utilizada por el adquirente como su vivienda o la de su familia, siempre que el dueño no recibiera renta por su ocupación..."

Para fines de dar cumplimiento a la ley antes transcrita el secretario de Hacienda promulgó un Reglamento que fue aprobado por el Gobernador de Puerto Rico el 17 de mayo de 1963. Este Reglamento señala los requisitos que se deben cumplir para tener derecho a la exención contributiva que establece la Ley.
La sección 2 del Reglamento establece las definiciones de los conceptos "dueño", "familia" y "fines residenciales", entre otros. Nos dice esta sección:

"Sección 2 DEFINICIONES

Artículo 2.-DEFINICIONES GENERALES. Las frases o términos de uso general que a continuación se expresan tendrán el siguiente significado en la interpretación de este Reglamento.

(1) DUEÑO - Significa la persona natural con título sobre la propiedad, apartamiento o local que se utilice como vivienda, incluyéndose dentro de este término cualquier cooperativa de vivienda para la cual la exoneración del pago de contribuciones se computará sobre el valor de tasación para fines contributivos atribuible proporcionalmente a cada unidad de vivienda.

(2) FAMILIA - Significa el núcleo íntimo de relación inmediata al dueño, que contempla al cónyuge y parientes dentro del cuarto grado de consanguinidad o segundo grado de afinidad.

(6) FINES RESIDENCIALES - Se entenderá que se dedica para "fines residenciales, cualquier estructura que el día 1ro. de enero de cada año esté siendo utilizada, o esté disponible para ser utilizada, como vivienda por su dueño o su familia, o cualquier nueva estructura, construida para la venta y tasada para fines contributivos a nombre de la entidad o persona que la construyó si a la fecha de la expedición del recibo de contribuciones está siendo utilizada o disponible para ser utilizada por el adquirente como su vivienda o la de su familia, siempre que el dueño no recibiera renta por su ocupación; incluyendo, en el caso de propiedades situadas en zona urbana, el solar donde dicha estructura radique, y, en el caso de propiedades situadas en zona rural y suburbana, el predio donde dicha estructura radique, hasta una cabida máxima de una cuerda." (Enfasis suplido)
Por su parte la sección 3 de este Reglamento establece como requisitos para que la persona pueda disfrutar del beneficio de exención, la titulación y la residencia. A estos efectos nos dice esta sección:

"Sección 3 - REQUISITOS A CUMPLIR PARA DISFRUTAR DEL DERECHO A LA EXONERACION CONTRIBUTIVA

Artículo 3.-TITULACION. - La persona que solicite este beneficio contributivo deberá ser dueña 
*1175
de la propiedad, ya sea por escritura o por algún otro documento público'que corrobore el título y posesión del inmueble.

Artículo 4.-RESIDENCIA.- El dueño o su familia deberá residir en la vivienda objeto del beneficio contributivo, sin que reciba renta por su ocupación." (Enfasis nuestro)
Si examinamos los hechos del caso ante nuestra consideración a la luz de las normas antes citadas, no podemos llegar a otra conclusión que no sea la de que al momento de solicitar la exención contributiva los esposos Contreras Amador no tenían título ni eran dueños de la propiedad objeto de la presente controversia. No hubo ninguna documentación que nos lleve a concluir lo contrario.
Lo único que aportaron los esposos Contreras Amador a favor de su alegación de que vivían la propiedad como dueños fue su declaración a los efectos de que lo hacían en calidad de dueños desde 1976, la eventual declaración jurada y las facturas de luz y agua otorgadas a su nombre. Nada de esto cumple con los requisitos establecidos en el Reglamento del Departamento de Hacienda, antes citado.
Por consiguiente, la apreciación que hizo el Tribunal de Primera Instancia a los efectos de que la exención contributiva que el Departamento de Hacienda otorgó a los esposos Contreras Amador fue concedida erróneamente, es del todo correcta. Esto surge con toda claridad de la prueba testifical y documental presentada y creída por el juzgador de los hechos.
En innumerables ocasiones hemos sostenido que el principio rector que guía nuestra función apelativa dispone que no se intervendrá con las determinaciones que haga un tribunal de instancia en ausencia de error manifiesto, prejuicio, parcialidad o pasión. Pueblo v. Pellot Pérez, 121 D.P.R. (1988). En el caso ante nuestra consideración no se ha demostrado que la apreciación de los hechos que hizo el Tribunal de Primera Instancia estuviera basada en alguno de los defectos mencionados en la jurisprudencia, por lo que estas determinaciones merecen respeto y deferencia.
III
Una vez hemos determinado que la exención contributiva que el Departamento de Hacienda concedió a los esposos Contreras Amador fue otorgada erróneamente, nos corresponde examinar si el error administrativo cometido por el Departamento de Hacienda al conceder la misma, le impide posteriormente al Departamento cobrar las contribuciones adeudadas. 
Es claro que la concesión de exención contributiva en cuestión fue un error administrativo cometido por los funcionarios del Departamento de Hacienda. Reiteradamente nuestro Tribunal Supremo ha sostenido que un error administrativo no crea derechos ni impide su corrección. Por ende, una parte no puede pretender ampararse en una actuación administrativa incorrecta o ilegal para evadir su responsabilidad. Martínez Surís v. Colón Muñoz, 132 D.P.R._(1992), 92 J.T.S. 99; Del Rey v. J.A.C.L., 107 D.P.R. 348 (1978). Véase además, Hatton v. Municipio de Ponce, 136 D.P.R. _ (1994), 94 J.T.S. 2./
Han sido varios los casos en donde el Tribunal Supremo ha sostenido la norma de que cuando una agencia administrativa hubiese cometido un error en la aplicación de la ley, dicha actuación no sería válida. Por lo tanto, las partes no pueden ampararse en dicha actuación para impedir su corrección. Véase, E.L.A. v. Rivera, 88 D.P.R. 196 (1963); Infante v. Tribunal Examinador de Médicos, 84 D.P.R. 308 (1967).
En el caso que nos ocupa, el Director del Negociado de Contribuciones sobre la Propiedad actuó en contra de la ley al conceder la exención contributiva a la propiedad en controversia. Dicha actuación no puede impedir al Departamento de Hacienda el cobro de las contribuciones adedudadas.
Nos resta examinar la aplicabilidad de la doctrina de enriquecimiento injusto al caso de epígrafe. Según Ortiz Andújar v. E L.A., 122 D.P.R. 817 (1988), para que aplique esta doctrina deben estar presentes los siguientes requisitos: (1) existencia de un enriquecimiento; (2) un correlativo empobrecimiento; (3) la conexión entre el empobrecimiento y el enriquecimiento; (4) falta de causa que justifique el enriquecimiento y (5) inexistencia de un precepto legal que excluya la aplicación del enriquecimiento sin causa.
*1176 Si examinamos el caso ante nos a la luz de lo dispuesto en Ortiz Andújar, podemos llegar a la conclusión de que se cumplen todos y cada uno de los requisitos para la aplicación de la doctrina de enriquecimiento injusto. Existe enriquecimiento de parte de los contribuyentes al retener el pago de las contribuciones adeudadas. Correlativamente, el Departamento de Hacienda empobrece al no cobrar las mismas como consecuencia de la evasión contributiva señalada. No hay causa ni precepto legal alguno que justifique el enriquecimiento.
Este Tribunal no puede avalar una conducta basada en la falsedad y que como resultado desemboque en un enriquecimiento injusto.
El propósito de la aplicación de la doctrina del enriquecimiento injusto al caso de autos es la restitución de la ventaja patrimonial adquirida por la parte enriquecida. 
Por otro lado, no debemos pasar por alto el hecho de que el formulario de exención contributiva advertía que de comprobarse posteriormente que la propiedad no reunía los requisitos exigidos se procedería a expedir los recibos retroactivos correspondientes.
En el caso de epígrafe podemos notar que la solicitud de exención contributiva que hiciera la Sra. Amador carecía del requisito de buena fe. El Diccionario Jurídico Según la Jurisprudencia del Tribunal Supremo de Puerto Rico define buena fe de la siguiente manera:

"Los preceptos que se refieren a la buena fe en el sentido de conceder protección a la confianza en una apariencia jurídica, parten de la premisa de una creencia en que la otra parte —la que realiza el acto de disposición— ostenta una legitimación que en realidad carece. J. Puig Brutau, Introducción al Derecho Civil, Barcelona, Ed. Bosch, 1981, págs. 417-418.

La frase "buena fe", como norma interpretativa, significa confianza, seguridad y honorabilidad basada en ella. La palabra "fe", fidelidad, quiere decir que una de las partes se entrega confiadamente a la conducta "leal" de la otra. Comentarios a las reformas del Código Civil, Madrid, Bd. Tecnos, 1977, Vol. I, pág. 368. La actuación contraria a los propios actos del titular es uno de los supuestos típicos del ejercicio de derechos subjetivos en contravención al principio de la buena fe. Puig Brutau, op. cit., págs. 418-419."

En resumen, dado el caso de que hubo un error administrativo en la concesión de la exención contributiva, el Departamento de Hacienda podía cobrar las contribuciones adeudadas una vez se percató del error cometido. Más aún cuando el error fue provocado por el contribuyente.
rv
Por último, nos corresponde examinar a quién le corresponde pagar la deuda contributiva en controversia en el caso de epígrafe.
Sobre este particular nos dice el Art. 200 de la Ley Hipotecaria de 1979: 

"Se constituye hipoteca legal a favor del Estado Libre Asociado de Puerto Rico, y las correspondientes municipalidades, sobre los bienes inmuebles de los contribuyentes por el importe de las contribuciones territoriales de las cinco últimas anualidades y las corrientes no pagadas de los impuestos que graviten sobre ellos. Esta hipoteca legal tiene carácter de tácita y determina una preferencia a beneficio de sus titulares sobre todo acreedor, y sobre el tercer adquirente, aunque haya inscrito sus derechos."

El Artículo antes transcrito establece que las contribuciones sobre la propiedad constituyen un gravamen sobre ésta, es decir una carga real impuesta sobre el inmueble independientemente de quién sea su poseedor.
Al aplicar este Artículo al caso de autos concluimos que los esposos López Santiago son responsables del pago de las contribuciones adeudadas.
La Ley Hipotecaria le concede el derecho al Departamento de Hacienda de cobrar las *1177 contribuciones adeudadas, incluso de embargar el inmueble si fuera necesario para cobrar la deuda.
Como bien señala el Tribunal de Primera Instancia en su sentencia, es materia de un pleito independiente la controversia en cuanto a si los esposos Contreras Amador deben responderle a los compradores por el pago de las contribuciones adeudadas.
V
Por los motivos antes expuestos, se confirma la sentencia del Tribunal de Primera Instancia de 31 de marzo de 1994. j
Lo acordó el Tribunal y lo certifica la señora Secretaria General.
María de la C. González Cruz
Secretaria General
ESCOLIOS 96 DTA 300
1. La Corporación Playa del Caribe Development Corp. fue la desarrolladora de la Urbanización Playa Santa en Guánica y era la propietaria de las casas que allí se construyeron. Esta corporación tenía como presidente al Sr. Blas Conteras y como accionista al Sr. Eduardo Méndez. En el año 1976 la corporación se acogió al capítulo 11 de la Ley de Quiebras Federal.
En algún momento después de 1980 la compañía desarrolladora del proyecto de Urbanización Playa Santa, Corporación Playa del Caribe Development Corporation, le vendió a Senior Corp. la propiedad que está en controversia en el presente recurso.
2. La Certificación de Valores Contributivos otorgada el 4 de enero de 1989 establece lo siguiente:

"Si mediante investigación realizada posteriormente se comprueba que la propiedad no reúne [sic] los requisitos para disfrutar de la_exención,_exoneración concedida, se procederá a expedir los recibos retroactivos para los años correspondientes.

Es responsabilidad del adquirente de una propiedad que disfruta de una exoneración o exención contributiva parcial o total, constatar si la misma ha sido otorgada correctamente y legalmente por los oficiales de incumbentes."

3. 13 L.P.R.A. see. 402. Esta Ley fue derogada recientemente por la Ley Núm. 83 de 30 de agosto de 1991, 21 L.P.R.A. see. 5001 y ss. Sin embargo, el presente recurso se rige por la derogada ley ya que la Ley Núm. 83 tiene efecto prospectivo a partir del año económico 1992-93.
4. Reglamento promulgado por el Secretario de Hacienda para el cumplimiento de las disposiciones de la Ley Núm. 24 aprobada el 8 de junio de 1962, para exonerar a los propietarios del pago de contribuciones hasta quince mil (15,000) dólares de valoración correspondientes al año 1962-63 y años económicos siguientes impuestas sobre propiedad dedicada para fines residenciales. (Publicado por el Negociado de Tasación de la Propiedad en agosto de 1963)
5. No podemos perder de perspectiva que en el caso ante nuestra consideración, el Departamento de Hacienda incurrió en error a base de la información falsa que proveyó la Sra. Amador. Por consiguiente, los demandantes no pueden beneficiarse de dicha actuación ilícita.
6. Véase, E. Vázquez Bote, Tratado Teórico y Práctico de Derecho Privado Puertorriqueño. San Juan, Butterworth de Puerto Rico, 1992, Vol. IV. pág. 216 et seq.
7. M. Morales Lebrón, Diccionario Jurídico según la Jurisprudencia del Tribunal Supremo de Puerto Rico, Cincinnati, Ohio, University of Cincinatti, 1994, Vol. I A, pág. 110.
*1178 8. 30 L.P.R.A. sec. 2651. Este Artículo fue enmendado mediante la Ley Núm. 83 de 30 de agosto de 1991 a los fines de añadir al Centro de Recaudación de Ingresos Municipales del Estado Libre Asociado de Puerto Rico, como una de las entidades a favor de las cuales se constituye la hipoteca.