ESTADO LIBRE ASOCIADO DE PUERTO RICO
EN EL TRIBUNAL DE APELACIONES
PANEL IV

| ALMA MARGARITA CRUZ SANTANA Y OTROS<br><br>Apelantes<br><br>v.<br><br>JOSÉ RAMON FUENTES PÉREZ Y OTROS<br><br>Apelados | **TA2026AP00006** | *Apelación* procedente del Tribunal de Primera Instancia Sala Superior de Humacao<br><br>Civil Núm. HU2021CV00529<br><br>Sobre: Cobro de lo indebido Daños y Perjuicios |
|---|---|---|

Panel integrado por su presidenta la Jueza Ortiz Flores, el Juez Bonilla Ortiz y la Jueza Martínez Cordero.

Bonilla Ortiz, Juez Ponente

## SENTENCIA

En San Juan, Puerto Rico, a 17 de abril de 2026.

Comparece ante nos la Sra. Alma M. Cruz Santana (señora Cruz) y la Sra. Julia Santana (Sra. Santana) (en conjunto, "las apelantes") y nos solicitan que revisemos una Sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Humacao, notificada el 5 de diciembre de 2025. Mediante el referido dictamen, el foro primario desestimó la demanda instada por las apelantes.

Por los fundamentos que expondremos a continuación, **MODIFICAMOS** la *Sentencia* apelada para **REVOCAR** la desestimación de la demanda contra el señor Fuentes y se confirma en los demás extremos.

## I.

El 28 de mayo de 2021, las apelantes presentaron una *Demanda* sobre cobro de lo indebido, y daños y perjuicios en contra del Sr. José R. Fuentes Pérez (señor Fuentes); el Consejo de Titulares de Fairlakes Villages (Consejo de Titulares); DCI, Puerto Rico (DCI); First

Bank of Puerto Rico; entre otros de nombres desconocidos.[1] El 12 de octubre de 2021, presentaron una solicitud para enmendar su demanda e incluir como parte codemandada a PMI Central, Inc. (PMI).[2] Así las cosas, el 30 de noviembre de 2021, presentaron su *Demanda Enmendada*.[3] Mediante esta, alegaron que el señor Fuentes quien durante el matrimonio con la señora Cruz[4] estuvo manejando parte de las finanzas de ella, incluyendo una cuenta que tenía con su mamá, la señora Santana, realizó débitos electrónicos no autorizados a Fairlakes Villages, sobre un apartamento privativo de él. Arguyeron que, el señor Fuentes no tenía autorización para sustraer dichos fondos. Asimismo, señalaron que solicitaron a la institución bancaria que proveyera el formulario de autorización de débito firmado por las apelantes, pero el mismo no fue provisto. De igual forma, resaltaron que le exigieron a DCI -ahora PMI-, a su vez, a la Junta de Directores que les restituyeran el dinero debitado de su cuenta, el cual totalizaba la cantidad de $12,793.83, pero no lo realizaron. Por ello, solicitaron les fuera restituido todo el débito efectuado por las partes demandadas, además de $30,000.00 por la conducta negligente y culposa.

El 16 de septiembre de 2021, las apelantes presentaron una *Aviso de Desistimiento en Contra de la Parte Codemandada First Bank Puerto Rico*.[5] El 6 de

---

[1] *Demanda*, entrada núm. 1 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).
[2] *Demanda Enmendada*, entrada núm. 47 en SUMAC.
[3] *Demanda Enmendada¸* entrada núm. 60 en SUMAC.
[4] El 21 de septiembre de 2020, el foro primario notificó una *Sentencia* en la que decretó roto y disuelto el vínculo matrimonial entre las partes. Véase, entrada 1, anejo A en la *Demanda*.
[5] *Aviso de Desistimiento en Contra de la Parte Codemandada First Bank Puerto Rico*, entrada núm. 40 en SUMAC.

octubre de 2021, el foro primario notificó una *Sentencia Parcial*, mediante la cual la declaró *Ha Lugar*.[6]

Posteriormente, el 28 de septiembre de 2021, las apelantes presentaron *Moción en Solicitud de Anotación de Rebeldía*.[7] En esta, solicitaron la anotación de rebeldía a PMI, debido a que no había contestado la demanda, ni presentado alegacion responsiva. Así las cosas, el 1 de octubre de 2021, el foro primario notificó una *Resolución* en la que declaró *Ha Lugar* la solicitud y le anotó la rebeldía a PMI.[8]

No obstante, el 12 de noviembre de 2021, PMI, sin someterse a la jurisdicción, presentó una *Moción de Desestimación*.[9] Mediante esta, alegó que aun cuando manejaban algunas cuentas o clientes de DCI Puerto Rico, eso no implicaba que ambas corporaciones se fusionaron o consolidaron. Por ello, solicitó la desestimación de la demanda en su contra, debido a que el contrato con la junta de condómines lo era DCI-AM, y no DCI Puerto Rico, ni mucho menos PMI.

El 22 de noviembre de 2021, el señor Fuentes presentó su *Contestación a la Demanda Enmendada*. En esencia, arguyó que la demanda era una acción frívola, temeraria y carente de méritos. Asimismo, como parte de sus defensas afirmativas esbozó que los hechos alegados en la demanda fueron autorizados y con pleno conocimiento de las apelantes.

El 2 de diciembre de 2021, el Consejo de Titulares presentó una *Moción de Desestimación de Demanda*

---

[6] *Sentencia Parcial*, entrada núm. 46 en SUMAC.
[7] *Moción en Solicitud de Anotación de Rebeldía*, entrada núm. 43 en SUMAC.
[8] *Resolución*, entrada núm. 44 en SUMAC.
[9] *Moción de Desestimación*, entrada núm. 52 en SUMAC.

*Enmendada*.[10]   Sostuvieron que la demanda no satisfacía una causa de acción cuasicontractual bajo la figura de cobro de lo indebido, ni una reclamación extracontractual de daños y perjuicios en su contra. Alegó que, los pagos recibidos, aunque era de una cuenta distinta, no eran erróneos o huérfanos de justa causa. Por ello, la causa de acción debía dirigirse contra el verdadero deudor, siendo el señor Fuentes. En cuanto a la causa de acción por daños y perjuicios, resaltó que la Ley de Condominios, ni la Ley de Transacciones Comerciales proveían una obligación a la Junta de Directores de examinar el origen de los fondos que reciben por concepto de cuotas de mantenimiento. De otra parte, mencionó que la causa de acción estaba prescrita, bajo las disposiciones de la *Ley de Transferencia Electrónica de Fondos* (EFTA) y del *Reglamento E*, debido a que tenían un (1) año desde la ocurrencia de la violación, y el cliente le tenía que notificar al banco dentro de sesenta (60) días la irregularidad de su estado de cuenta. Por ello, reiteran que las apelantes desistieron de la demanda con First Bank al no notificarle los alegados débitos no autorizados, y consecuentemente, estaban impedidas de entablar una acción bajo las disposiciones de la EFTA y recobrar las pérdidas.

En desacuerdo, el 23 de diciembre de 2021, las apelantes presentaron una *Oposición de Moción en Solicitud de Desestimación de Demanda Enmendada*.[11]   En síntesis, plantearon que cumplían con los requisitos

---

[10] *Moción de Desestimación de Demanda Enmendada*, entrada núm. 61 en SUMAC.
[11] *Oposición de Moción en Solicitud de Desestimación de Demanda Enmendada*, entrada núm. 66 en SUMAC.

jurisdiccionales necesarios para solicitar la restitución del dinero pagado indebidamente a favor de Fairlakes Villages. Asimismo, arguyeron que la falta de evidencia de autorización de pago por el Consejo de Titulares demostró negligencia e incumplimiento con la ley que regula la transferencia de fondos electrónicos de cuentas de consumidores. Por lo que, incumplieron con solicitar la documentación necesaria para realizar las transferencias electrónicas. Finalmente, alegaron que no tenían que cumplir con la notificación previa de los sesenta (60) días al banco, pues la ley federal permitía presentar demandas civiles contra personas, que sin autorización alguna iniciaran una transferencia electrónica desde la cuenta del consumidor.

En la misma fecha, las apelantes presentaron una *Oposición de Moción de Desestimación* sobre la solicitud de PMI.[12] Alegaron que, PMI no presentó evidencia que demostrara los términos de contratación entre PMI Central y el Condominio Fairlakes Villages. Por ello, esbozan que el foro primario estaba impedido de determinar si había una compra de activos por parte de PMI Central, como consecuencia, la moción de desestimación era prematura.

El 5 de enero de 2022, el Consejo de Titulares presentó *Escrito de Réplica en Apoyo Adicional a Moción de Desestimación*.[13] En esta, reiteraron que las apelantes no tenían legitimación activa para repetir el pago contra Fairlakes Villages, sino contra el señor Fuentes; que habían renunciado a cualquier reclamo, por su alegado incumplimiento con la EFTA y su reglamento;

---

[12] *Oposición de Moción de Desestimación*, entrada núm. 67 en SUMAC.
[13] *Escrito de Réplica en Apoyo Adicional a Moción de Desestimación*, entrada núm. 69 en SUMAC.

y las alegaciones de la demanda enmendada no cumplieron con el estándar de plausibilidad de la Regla 10.2 de Procedimiento Civil, por lo cual, su litigación no procedía bajo el pretexto de que, con el descubrimiento de prueba, podían probarse las alegaciones.

El 25 de enero de 2022, las apelantes presentaron una *Dúplica a Escrito de Réplica en Apoyo Adicional a Moción de Desestimación*.[14] En esencia, manifestaron que tenían legitimación activa para reclamar el pago recibido por el Consejo de Titulares, con quienes no tenían obligación jurídica alguna. Finalmente, alegaron que el requisito de notificación en el término de sesenta (60) días no se aplicaba a la acción presentada contra el Consejo de Titulares.

Evaluadas las mociones, el 2 de febrero de 2022, el foro primario dictó una *Sentencia Parcial*.[15] En esta, planteo las siguientes dos determinaciones de hechos:

1. Los hechos que dan lugar a la demanda se dieron entre el 2016 y 2019.

2. La demanda de epígrafe se presentó e 20 de mayo de 2021 haciendo solicitudes de restitución de dineros mal cobrados al amparo del Código Civil de 1930.

Así las cosas, el foro primario concluyó que no procedía la figura de la restitución en torno al Consejo de Titulares. Dispuso que, para que la figura aplique era necesario que el que recibe el pago no tuviera derecho a ello, lo que no aplica a la situación de hechos pues el pago en efecto se hizo por una deuda real y exigible por el Consejo. Consecuentemente, declaró *Ha Lugar* la moción de desestimación; y dejó pendiente por

---

[14] *Dúplica a Escrito de Réplica en Apoyo Adicional a Moción de Desestimación*, entrada núm. 73 en SUMAC.
[15] *Sentencia Parcial*, entrada núm. 75 en SUMAC.

ser prematura la reclamación de daños por la negligencia.

Luego de varias incidencias procesales, el 5 de julio de 2022, las apelantes presentaron una *Solicitud de Desistimiento con Perjuicio*.[16] Mediante la cual, solicitaron el desistimiento con perjuicio de la demanda contra el Consejo de Titulares de Fairlakes Villages y su Junta de Directores, ya que las partes llegaron a una transacción.

El 12 de julio de 2022, el foro primario notificó una *Sentencia Parcial*, en la que declaró *Ha Lugar* la solicitud instada por las apelantes.[17]

Posteriormente, el 28 de mayo de 2024, las partes de epígrafe presentaron el *Informe Preliminar de Conferencia con Antelación al Juicio*.[18]

Luego de celebrado el juicio, el 7 de abril de 2025, PMI Central presentó una *Moción Solicitando Desestimación y Temeridad*.[19] Sostuvo que, PMI no existía al momento de los alegados actos que provocaron la acción, sino que era DCI quien había gestionados los cobros. Asimismo, reiteró que era un mandante que gestionaba los cobros de sus clientes y en nada se beneficiaba de dichos pagos. Incluso, mencionó que los cobros no entraban a la cuenta de PMI Central, sino que eran depositados en la cuenta de Fairlakes. Por ello, solicitó la desestimación de la causa de acción en su contra, e impusiera temeridad a las apelantes.

---

[16] *Solicitud de Desistimiento con Perjuicio*, entrada núm. 117 en SUMAC.
[17] *Sentencia Parcial*, entrada núm. 119 en SUMAC.
[18] *Informe preliminar de Conferencia con Antelación al Juicio*, entrada núm. 145 en SUMAC.
[19] *Moción Solicitando Desestimación y Temeridad*, entrada núm. 164 en SUMAC.

El 22 de abril de 2025, las apelantes presentaron su *Oposición de Moción Solicitando Desestimación y Temeridad*.[20] Mediante esta, expresaron que era necesario revisar el contrato de gestión de cobro suscrito entre DCI -ahora PMI- y el condominio Fairlakes Villages, el cual determinaría si en efecto se trataba de un administrador o un contrato de servicios, sin embargo, nunca lo presentaron. Alegó que, si el foro primario determinaba que PMI, era mandatario de Fairlakes, estaba obligado a llevar a cabo sus funciones de administrador según el contrato pactado y el ordenamiento vigente. Por ello, en el caso del cobro de mantenimiento, la decisión sobre aceptar los pagos por transferencia electrónica requería que cumpliera con las disposiciones de la EFTA. Por ende, requería que el dueño de la cuenta autorizara mediante escrito los débitos de la transacción, y retuvieran copia de dicha autorización para entregársela al dueño de la cuenta. Sin embargo, plantearon que la falta de evidencia de autorización demostró negligencia, e incumplimiento con la ley federal. Finalmente, arguyeron que las obligaciones de DCI fueron transmitidas a PMI al momento de la compraventa. Al momento de la compra, la administración de DCI se convirtió en la misma administración que PMI, realizando las mismas gestiones comerciales. Por lo tanto, el foro primario debía denegar la solicitud de desestimación.

Evaluadas las mociones, el 29 de diciembre de 2025, el foro primario notificó una *Sentencia Enmendada Nunc*

---

[20] *Oposición de Moción Solicitando Desestimación y Temeridad*, entrada núm. 169 en SUMAC.

*Pro Tunc*.[21]    Mediante esta, planteo las siguientes determinaciones de hechos:

1. El Sr. Fuentes y la Sra. Cruz contrajeron matrimonio bajo el régimen de separación de bienes y suscribieron Capitulaciones Matrimoniales.

2. El Sr. Fuentes y la Sra. Cruz se divorciaron mediante *Sentencia* emitida el 14 de septiembre de 2020.

3. El Sr. Fuentes Pérez era el único dueño del apartamento 666 ubicado en Fairlakes Villages, Palmas del Mar, en el Municipio de Humacao, Puerto Rico.

4. El Sr. Fuentes era el encargado del pago de la hipoteca y las cuotas de mantenimiento del referido apartamento.

5. Durante su matrimonio, Sr. Fuentes y la Sra. Cruz visitaron el apartamento 666 en ocasiones.

6. Las demandantes son las únicas dueñas de la cuenta núm. XXXXX843 en First Bank Puerto Rico.

7. A inicios del 2020, la Sra. Cruz identificó ciertos cargos efectuados en su cuenta de banco entre el 2016 al 2019, que no fueron autorizados por ella o su madre. A raíz de ello, inició una investigación interna en First Bank.

8. Como resultado de tal investigación, la Sra. Cruz descubrió que su cuenta de banco fue debitada en veinticinco ocasiones, por concepto de pagos efectuados al comerciante "Fairlakes Village".

9. La Sra. Cruz se comunicó en varias ocasiones con empleados de DCI solicitando el reembolso de los fondos cobrados sin su autorización.

10. El personal de DCI le informó a la Sra. Cruz que consultarían con la Junta de Directores de Fairlakes Village para el posible reembolso del dinero ya que tal decisión era potestad de Fairlakes Village.

11. Los fondos no le fueron reembolsados a la Sra. Cruz.

12. Las demandantes nunca autorizaron el cobro de cuotas de mantenimiento de parte de Fairlakes Village a su cuenta de banco.

---

[21] *Sentencia Enmendada Nunc Pro Tunc*, entrada núm. 177 en SUMAC. El 5 de diciembre de 2025, fue notificada la *Sentencia*. No obstante, el 21 de diciembre de 2025, las apelantes solicitaron una enmienda para que corrigieran varios incisos de la sección de determinaciones de hechos, en la medida que expresaran correctamente el nombre de la demandante. Así como, que las transacciones aludidas en la demanda ocurrieron entre los años 2016 y 2019.

13. Las demandantes no suscribieron o firmaron hoja de autorización de débito (AHC Payment Authorization Form) para el pago de las cuotas de mantenimiento del apartamento 666 en Fairlakes Village.

14. El Sr. Fuentes no suscribió o firmó una hoja de autorización de débito (ACH Payment Authorization Form) para el pago de las cuotas de mantenimiento del apartamento 666 en Fairlakes Village.

15. El Sr. Fuentes le remitió a DCI correos electrónicos el 13 de octubre de 2016, 27 de marzo de 2017 y 22 de octubre de 2020, solicitando se debitara el pago de la cuota de mantenimiento correspondiente al apartamento 666 a la cuenta núm. XXXXX843 en First Bank, es decir, la cuenta de las demandantes. En cada comunicación, el Sr. Fuentes solicitó que se debitara el cobro de un mes de cuota de mantenimiento.

16. DCI tramitó el cobro de cuotas de mantenimiento de la cuenta núm. XXXXX843 en First Bank Puerto Rico en 25 ocasiones entre julio de 2016 a julio de 2019. Tales fondos fueron depositados en la cuenta de Fairlakes Village.

17. Las sumas debitadas a la cuenta de banco de las demandantes por tal concepto suman un total de $12,792.83.

18. El Consejo le pagaba a DCI por la administración de Fairlakes Village.

19. DCI no retenía los fondos recibidos por concepto de cuotas de mantenimiento sino se depositaba en la cuenta de Fairlakes Village.

20. DCI mantenía un archivo con las autorizaciones de débito (ACH Payment Authorization Form) para aquellos residentes que autorizaban el pago directo de las cuotas de mantenimiento. Cada formulario estaba acompañado de un cheque void.

21. DCI cesó operaciones en el 2020.

22. PMI fue legalmente constituida en julio de 2020 e inició operaciones formales en noviembre de ese mismo año.

23. Previo al inicio de operaciones, PMI emitió notificaciones a la clientela de DCI brindándoles la oportunidad de aceptar o rechazar la continuación de servicios de administración bajo la nueva corporación.

24. Desde el 2020, PMI le proveyó servicios de administración a Fairlakes Village, de mes a mes por un periodo de tiempo hasta que cesaron de proveer servicios, a solicitud de Fairlakes Village.

El foro apelado añadió que PMI no sometió evidencia del contrato suscrito entre el Consejo de Titulares con DCI o PMI, el cual presuntamente establecía que PMI actuaba como agente administrador de Fairlakes Villages y, por lo tanto, su relación constituía un contrato de mandato. No obstante, le dio credibilidad al testimonio del Lcdo. Anthony Rodríguez -quien laboró para DCI- y declaró que DCI efectuaba toda gestión a solicitud y en representación de Fairlakes Villages, que no retenían los fondos obtenidos, sino que Fairlakes Villages los recibía y manejaba. A su vez, tomó conocimiento *motu proprio* de casos en la jurisdicción en los cuales DCI figuraba como parte, identificada como agente administrador de otros complejos residenciales.

Asimismo, dispuso que DCI fue disuelta y cesó operaciones en el 2020, no obstante, para le fecha de la presentación del caso en el 2021 no habían transcurrido los tres (3) años establecidos en el Artículo 9.08 de la *Ley General de Corporaciones*, 14 LPRA sec. 3708,[22] durante el cual DCI era el responsable por cualquier pleito en su contra. Por ello, al no haber evidencia de

---

[22] El precitado artículo establece que:

Toda corporación que se extinga por limitación propia o que por otro modo se disuelva, continuará como cuerpo corporativo por un plazo de tres (3) años a partir de la fecha de extinción o de disolución o por cualquier plazo mayor que el Tribunal de Primera Instancia (Sala Superior) en el ejercicio de su discreción disponga a los efectos de llevar adelante los pleitos entablados por la corporación y de proseguir con la defensa de los pleitos entablados contra ella, ya sean civiles, criminales o administrativos, así como a los efectos de liquidar y terminar el negocio, de cumplir con sus obligaciones y de distribuir a los accionistas los activos restantes. No podrá continuar la personalidad jurídica con el propósito de continuar los negocios para los cuales se creó dicha corporación.

Respecto a cualquier acción, pleito o procedimiento entablado o instituido por la corporación o contra ella, antes de su extinción o dentro de los tres (3) años siguientes a su extinción o disolución, la corporación continuará como entidad corporativa después del plazo de los tres (3) años y hasta que se ejecuten totalmente cualesquiera sentencias, órdenes o decretos respecto a las acciones, pleitos o procedimientos antes expresados, sin la necesidad de ninguna.

que DCI haya sido emplazada, el foro primario no tenía jurisdicción para atender dicho reclamo en su contra.

De otra parte, determinó que las apelantes no habían establecido una causa de acción en contra de PMI. Concluyó que PMI no participó de los alegados eventos y que DCI fue quien efectuó los débitos de su cuenta entre 2016-2019. Por consiguiente, indicó que era improcedente imponerle responsabilidad a una corporación por las actuaciones de otra corporación, basándose en la doctrina de traspaso de negocio, y más cuando no presentaron evidencia sobre una fusión o consolidación de las corporaciones.

Por otra parte, el foro *a quo* mencionó que no aplicaba la sección 1693e de la EFTA, puesto que, no hubo un acuerdo de transferencia electrónica de fondos preautorizada, el cual vulnerara las disposiciones básicas de la EFTA. Añadió que, los débitos realizados por el Consejo de Titulares por conducto de DCI, desde la cuenta de las apelantes constituyó una violación clara de la EFTA al no haber una autorización válida. No obstante, al haber dictado una Sentencia Parcial desestimando toda reclamación entre estas, no procedía la concesión de cuantía adicional al amparo de la EFTA.

Finalmente, concluyó que las apelantes no lograron demostrar la existencia de angustias mentales, ni que se viera disminuido su salario o ingreso. Por ello, no procedía una partida por concepto de daños y perjuicios. Consecuentemente, dictó sentencia desestimando la *Demanda*.

Inconformes, el 4 de enero de 2026, las apelantes presentaron el recurso de epígrafe, mediante el cual plantearon los siguientes señalamientos de error:

PRIMERO: Erró y abusó de su discreción el Tribunal de Primera Instancia al dictar Sentencia final desestimando la Demanda de autos aun cuando no fueron atendidas todas las reclamaciones en contra de todas las partes.

SEGUNDO: Erró el Tribunal de Primera Instancia y abusó de su discreción al desestimar la Demanda en su totalidad y sin ordenar restitución, aun cuando quedó probado que el codemandado José Fuentes Pérez se enriqueció injustamente de los débitos no autorizados realizados en la cuenta de las apelantes.

TERCERO: Erró el Tribunal de Primera Instancia al apreciar la prueba desfilada cuando determinó que PMI no es corporación sucesora y como tal no responde por las deudas y obligaciones de la corporación DCI.

El 13 de enero de 2026, emitimos una *Resolución* en la cual le concedimos a la parte apelada el término dispuesto en nuestro Reglamento, según enmendado, 2025 TSPR 42 para que presentara su alegato en oposición.

Asimismo, emitimos una Resolución, mediante la cual autorizamos la preparación de la transcripción de la prueba oral. Por lo que, las apelantes tendrían cuarenta y cinco (45) días para así presentarla, junto con una moción conjunta firmada por la representación de todas las partes, certificando que la misma es una transcripción fiel y exacta.

El 3 de marzo de 2026, las partes de epígrafe presentaron una *Moción Conjunta en Cumplimiento de Orden*. Mediante la cual, certificaron que la transcripción de las vistas era una copia fiel a la regrabación de los procesos; por lo cual, quedó estipulada por las partes la reproducción de la prueba oral.

Así las cosas, en la misma fecha emitimos una *Resolución* concediéndole a las partes un término para que presentaran su alegato suplementario.

En cumplimiento con nuestra orden, el 24 de marzo de 2026, la parte apelante presentó su alegato suplementario.

El 23 de marzo de 2026, las apelantes presentaron su *Alegato Suplementario dela Parte Apelante al Amparo de la Regla 21.*

En virtud de la Regla 7(B)(5) del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA,* 2025 TSPR 141, se exime a la parte apelada de presentar el alegato suplementario, por lo tanto, procedemos a exponer la normativa jurídica aplicable a la controversia ante nuestra consideración.

**II.**

**-A-**

Según la Regla 42.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 42.1, el término "Sentencia" incluye cualquier determinación del foro primario que resuelva finalmente la cuestión litigiosa y de la cual pueda apelarse. Expresa el tratadista Hernández Colón que una sentencia es la adjudicación definitiva de los derechos y obligaciones de las partes. Es el producto terminado del proceso en donde las partes han sometido sus alegaciones y su prueba al tribunal, y éste, después de darle deliberada consideración, dicta lo que se conoce como la sentencia. R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 5ta ed., San Juan, Ed. LexisNexis de Puerto Rico, Inc., 2010, pág. 375.

El escrito o documento que contiene la sentencia cuando el caso se ha visto en sus méritos se divide en cuatro partes: (1) la relación del caso; (2) las determinaciones de hechos; (3) conclusiones de derecho; (4) la sentencia, o parte dispositiva en donde el tribunal aplica las conclusiones de derecho a las determinaciones de hecho. Hernández Colón, *op. cit.,* pág. 375-376. Esta forma de emitir la sentencia garantiza a las partes que su causa no será juzgada con arbitrariedad, ya que el juez o la jueza tiene que considerar la prueba que le fue presentada a la luz de las Reglas de Evidencia, y luego tiene que especificar cuál es el Derecho aplicable al caso. *Andino v. Topeka,* Inc., 142 DPR 933 (1997). A su vez, una sentencia explicada y fundamentada facilita la función revisora del foro apelativo al presentarle el cuadro fáctico claro que nutrió la conciencia judicial al juzgador. *Aguayo v. R&G Mortgage,* 169 DPR 36 (2006).

Puntualizamos que una sentencia pone fin a la controversia existente entre las partes mediante una adjudicación final. *Abrams Rivera v. ELA,* 178 DPR 914 (2010); *US Fire Ins. v. AEE,* 151 DPR 962 (2000). Es final cuando resuelve definitivamente el caso en sus méritos en forma tal que solo queda pendiente la ejecución de la sentencia. *Johnson & Johnson v. Munc. San Juan,* 172 DPR 840 (2008); *García v. Padró,* 165 DPR 324 (2005). Por ello, la sentencia es el resultado de un proceso de reflexión y las determinaciones que haga el juez o jueza tanto de hecho como de Derecho, deben reflejar igualmente el resultado de ese proceso. Véase, J. Cuevas Segarra, *Tratado de Derecho Procesal Civil,*

2da ed., Estados Unidos, Ed. Publicaciones JTS, 2011, T. IV, pág. 1217-1218.

-B-

La doctrina de enriquecimiento injusto establece que nadie puede enriquecerse a expensas de otra persona sin que exista alguna causa que justifique el enriquecimiento. *Ortiz Andújar v. ELA*, 122 DPR 817, 822 (1988). Cuando la ley no contempla una acción para otorgar un remedio en situaciones en las que se produce un desplazamiento en el patrimonio de una persona que solo beneficia a otra parte, ello sin justificación o razón alguna, surge la reclamación por enriquecimiento injusto. J. Puig Brutau, *Fundamentos de Derecho Civil*, Barcelona, Bosh 1ra. ed. 1983, Tomo II, Vol. III, pág. 44.

Para que proceda la acción por enriquecimiento injusto deben considerarse los siguientes requisitos: (1) la existencia de un enriquecimiento; (2) un empobrecimiento correlativo; (3) una conexión entre el empobrecimiento y el enriquecimiento; (4) falta de causa que justifique el enriquecimiento; y (5) la inexistencia de un precepto legal que excluya la aplicación del enriquecimiento sin causa. *Mun. de Quebradillas v. Corp. Salud Lares*, 180 DPR 1003, 1019 (2011), citando a *Hatton v. Mun. de Ponce*, 134 DPR 1001, 1010 (1994), *Ortiz Andújar v. ELA,* 122 DPR 817, 823 (1988).

**III.**

En el caso de autos, las apelantes presentaron tres señalamientos de error alegadamente cometidos por el foro primario. No obstante, discutiremos los primeros

dos (2) señalamientos de error en conjunto por estar estrechamente relacionados.

En esencia, las apelantes alegan que incidió el foro primario al dictar *Sentencia* y desestimar la demanda, aun cuando quedaron reclamaciones pendientes de atender. Plantean que, el foro *a quo* reconoció que el señor Fuentes se enriqueció injustamente puesto que, era el único responsable de los pagos adeudados a Fairlakes Villages, y que no estaba autorizado a debitar de la cuenta de banco de las apelantes para realizar el pago de las cuotas de mantenimiento. Asimismo, resaltan que el foro apelado incidió al limitarse a resolver la controversia sobre que no lograron establecer una causa de acción en contra de PMI al amparo de la EFTA, pero no atendió la reclamación contra el señor Fuentes. Por ello, enfatizan que erró el foro primario al no atender la reclamación sobre el enriquecimiento injusto por el aumento patrimonial experimentado por el señor Fuentes y el correlativo empobrecimiento de las apelantes. Así pues, sostienen que el foro primario debió ordenar la restitución de dichos fondos como parte de la *Sentencia*.

En el caso de autos, las apelantes presentaron una *Demanda* sobre cobro de dinero; cobro de lo indebido; enriquecimiento injusto; y daños y perjuicios, en contra del señor Fuentes, el Consejo de Titulares de Fairlakes Villages, First Bank, DCI, y PMI Central. Durante el tracto procesal del caso, el foro primario emitió varias Sentencias Parciales en las que atendió las causas de acción contra First Bank y el Consejo de Titulares. Por lo que, quedaba pendiente de adjudicación la causa de acción contra PMI, DCI y el señor Fuentes. En la *Sentencia* apelada, el foro primario concluyó que carecía

de jurisdicción sobre DCI, y que las apelantes no habían logrado establecer una causa de acción en contra de PMI. A su vez, determinó que los "débitos realizados por el Consejo, por conducto de DCI, desde la cuenta privativa de la [apelante] constituyen una violación clara de la EFTA al no existir autorización válida ni obligación subyacente. Consecuentemente, procede la devolución de las cuantías debitadas a la cuenta de banco de la demandante por parte del Consejo y DCI. Ahora bien, a solicitud del Consejo y las demandantes, este Tribunal dictó Sentencia Parcial desestimando toda reclamación entre estas." Por consiguiente, determinó que no procedía la concesión de cuantía adicional alguna al amparo de la EFTA, y dictó sentencia desestimando la demanda.

No obstante, la situación de hechos relatada demuestra que el foro primario no podía dictar sentencia sin adjudicar la causa de acción contra el señor Fuentes. De ahí que erró el foro *a quo* al adjudicar únicamente la causa de acción contra las corporaciones, sin tomar en cuenta las alegaciones de enriquecimiento injusto formuladas contra el señor Fuentes. Tal errado procedimiento incumple con lo requerido en la Regla 42.1 de Procedimiento Civil, *supra*, al no resolver finalmente toda la cuestión litigiosa existente entre las partes.

De otra parte, existe una clara incongruencia en el razonamiento del foro primario. El hecho de que el Tribunal de Instancia haya reconocido la ilegalidad de los débitos y la falta de causa para los mismos, pero se abstuvo de ordenar la restitución bajo el argumento de que las reclamaciones bajo EFTA contra los otros codemandados habían sido desestimadas, es erróneo. La

responsabilidad de los entes que procesaron los pagos es independiente de la obligación de restitución que recae sobre el beneficiario del pago. Por lo que, aun cuando las apelantes transigieron o desistieran de su reclamo contra los otros codemandados, no extingue la deuda reclamada contra el señor Fuentes, quien obtuvo ilegalmente un beneficio.

En mérito de lo expuesto, procedemos a revocar la *Sentencia* apelada, en lo que respecta a la desestimación de la reclamación contra el señor Fuentes. Por ende, procede la devolución del caso al foro primario para que, de conformidad con los hechos ya probados en su propia sentencia, proceda a dictar una nueva determinación ordenando al señor Fuentes la restitución de las cuantías debitadas de la cuenta de las apelantes, más intereses y costas correspondientes.

En cuanto a su tercer señalamiento de error, alegan que incidió el foro primario al determinar que PMI no era una corporación sucesora y no respondía por las deudas y obligaciones de DCI. No obstante, sostienen que mientras ocurría la transición, los servicios brindados a los clientes de DCI continuaron como de costumbre, sin interrupción alguna. Añadieron que, los servicios fueron brindados por los empleados de DCI, cuya mayoría pasó a laborar con PMI. Asimismo, resaltan que según el testimonio del Presidente de PMI, era socio de DCI desde el 2015, y al momento de la compra, la administración de DCI se convirtió en la misma administración de PMI. Por lo que, esbozan que es forzoso concluir que no se trata de dos entidades diferentes, sino de la continuación de una operación

anterior con nombres diferentes. Por todo ello, sostienen erró el foro primario en la *Sentencia* apelada.

Respecto al último señalamiento de error, las apelantes sostienen que incidió el foro primario al no imponer responsabilidad a PMI por los actos de DCI, bajo la premisa de que PMI es sucesora de DCI.

Es norma fundamental en nuestro ordenamiento jurídico que el derecho se sostiene sobre la prueba. Por lo que, para que podamos concluir que PMI en efecto era responsable como sucesora de DCI, el expediente debió contener evidencia -directa o circunstancial- que demostrara una identidad de accionistas, una transferencia de activos o una continuidad operativa entre ambas corporaciones.

Por lo tanto, tras un examen minucioso del expediente, estamos impedidos de variar la determinación emitida por el foro apelado sobre este particular. No procede que sustituyamos, mediante especulaciones o presunciones no probadas, la carga procesal que correspondía a las apelantes de demostrar los elementos constitutivos de la sucesión corporativa.

Consecuentemente, confirmamos la desestimación de la demanda únicamente en cuanto a PMI Central, Inc.

**IV.**

Por los fundamentos antes expuestos, **MODIFICAMOS** la *Sentencia* apelada para **REVOCAR** la desestimación de la demanda contra el señor Fuentes y se confirma en los demás extremos. Se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos contra el señor Fuentes, conforme lo aquí resuelto.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones